# Exhibit A

Superior Court of the District of Columbia
CIVIL DIVISION
Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

**Filed**
**D.C. Superior Court**
**04/18/2022 14:51PM**
**Clerk of the Court**

The Institute of Multidimensional Medicine
_____
Plaintiff
vs.

Metagenics, Inc.
_____
Defendant

Case Number 2022 CA 001535 B

*Delivered by hand to 25 Enterprise, AV, CA May 9, 2022*

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Amy Norris
_____
Name of Plaintiff's Attorney
616 E Street N.W. Suite 1156
_____
Address
Washington, DC 20004
202-830-1225
_____
Telephone

Clerk of the Court

By _____
Deputy Clerk

Date 04/18/2022

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828    የትርጉም አገልግሎት ለማግኘት (202) 879-4828

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]

Super. Ct. Civ. R. 4




**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
DIVISIÓN CIVIL
Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

_____
                              Demandante
        contra
                                                    Número de Caso: _____
_____
                              Demandado

## CITATORIO

Al susodicho Demandado:

  Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

  A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

*SECRETARIO DEL TRIBUNAL*

_____
Nombre del abogado del Demandante

                                            Por: _____
_____                   Subsecretario
Dirección

                                            Fecha _____
_____
Teléfono
如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면 (202) 879-4828    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

  IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

  Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                Super. Ct. Civ. R. 4

Filed
D.C. Superior Court
04/08/2022 09:07AM
Clerk of the Court

IN THE SUPERIOR COURT OF DISTRICT OF COLUMBIA

CIVIL DIVISION

**The Institute of Multidimensional Medicine**
D/B/A West End Apothecary
2311 M St NW
Suite 202,
Washington, DC
20037

v.

Case Num. 2022 CA 001535 B

**Metagenics, Inc.**
25 Enterprise
Ste 200
Aliso Viejo, CA
92656-2713

## COMPLAINT

1.    Metagenics, Inc. manufactures, markets, labels and sells health nutritional supplements, represented as "practitioner exclusive".



1



Ask me about

PEA Relief™

Designed to relieve minor pain.*
Featuring palmitoylethanolamide (PEA)
and full-spectrum hemp.

Click here for more information

*These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease.

2.      The statements, "practitioner exclusive" tells medical practitioners (doctors, nurse practitioners, etc.) that the product will only be distributed from a practitioner's office.

3.      The Institute for Multidimensional Medicine ("TIMM") is a practitioner's office in Washington, DC that engaged with Defendant to sell medical food health supplements.

4.      Defendant told TIMM that the products were medical grade products.

5.      Defendant labels the products as medical food.

6.      According to the U.S. Food and Drug Administration (the "FDA"), a medical food is "…a food which is formulated to be consumed or administered enterally **under the supervision of a physician** and which is intended for the specific dietary management of a disease or condition for which distinctive nutritional requirements, based on recognized scientific principles, are established by medical evaluation". Section 5(b)(3) of the Orphan Drug Act, 21 U.S.C. §360ee(b)(3) (emphasis added).

7.      Defendant told TIMM that the products were exclusive for "practitioner's office" and thus both "practitioner [and] exclusive" and "medical grade products".

8.      Defendant required TIMM to provide medical license information to sign-up and assigned TIMM a practitioner's code to purchase the products.

9.      Metagenics does not allow customers to purchase the products from the Metagenics website; the Metagenics website matches customers to a local provider for a medical recommendation. Metagenics states on their website that they partner "with functional and integrative healthcare providers."

10.     Dr. Sakiliba Mines is a doctor who is the founder of the Institute for Multidimensional Medicine. Ahmad Mines is a family nurse practitioner and the current owner of TIMM.

11.     During the pandemic, Dr. Mines was informed by her patients that Metagenics had begun selling the "practitioner exclusive" medical food on Amazon, despite still making claims on their website and product labeling that their products were "practitioner exclusive".

12. Metagenics had not previously sold on Amazon. When Defendant began this ongoing practice, they did not notify practitioners and continued to advertise products as practitioner exclusive and to solicit new practitioners to become distributors under false pretenses.

13. Due to the pandemic, and because Metagenics was already selling online on Amazon, and to try to mitigate any losses, Ahmad Mines of TIMM discussed with the Metagenics's local representative if he could begin selling the products on Amazon himself to his patients.

14. During a meeting on January 12, 2022 at 9 am, Tom Southward of Metagenics, Inc., Metagenics's representative for the mid-Atlantic region, stated that TIMM's selling the product on Amazon should not be an issue. The meeting was also attended by office manager Tayler Ables.

15. On or around February 9, 2022, Metagenics canceled the contract with TIMM unilaterally without any notice, in violation of their contract with TIMM; this not only hurt TIMM financially, but it also hurt their reputation, and it jeopardized the continuity of care for their patients.

16. Under the terms of the agreement between TIMM and Metagenics, as specified on the new account form, under "Internet Policy", the agreement states that a practitioner "who violate[s] [Metagenics's Policy] will receive ten (10) days' advance written notice from Metagenics that they are in violation of the Policy and therefore will no longer be able to purchase the Products after the end of the ten (10) day notice period" . . .after coming into "compliance with this Policy, [the practitioner] should promptly notify Metagenics. . . if [Practitioner] has brought his or her site into compliance with this Policy, Customer's account will be reactivated." (Exhibit A, 4.)

17. No written or verbal notice was given to TIMM, before Metagenics immediately canceled their account.

18. Further, if there was a misunderstanding, the terms of engagement specifically stated that Metagenics "desires to avoid any and all misunderstandings between [resellers] and itself regarding the terms and obligation of orders by its [resellers]." (*Id.* at 3).

19. TIMM, through Ahmad Mines and TIMM's attorney, promptly tried to reach out to Tom Southward and other Metagenics employees, but none of them were responsive.

20. TIMM also promptly notified Metagenics in writing of their compliance with the Policy, after ceasing selling on Amazon. (*See* Exhibit B).

21. To this date, TIMM has needed to fulfill continuity of care to its patients through the medical food, but it is no longer able to do so. Metagenics's misrepresentations and breach of contract has put the continuity of care of TIMM patients at jeopardy, caused reputational damage to TIMM, and has completely destroyed the benefit of the bargain for TIMM. The "practitioner exclusive" labeling was misleading and deceptive.

22. Defendant has been soliciting TIMM patients and fulfilling the orders of the TIMM patients without paying TIMM their commission; when TIMM patients contact Defendant about their inability to login with TIMM's information, Defendant has been fulfilling the orders of the TIMM patients without paying TIMM their commission and without the patients having established a relationship with a new practitioner.

## Jurisdiction and Venue

23. Jurisdiction is proper in this Court under D.C. Code § 11-921, D.C. Code § 13-423, and D.C. Code §28-3905(k)(1). Personal jurisdiction is proper under D.C. Code § 13-423(a)(1), § 13-423(a)(2), and D.C. Code § 13-423(a)(3).

## First Cause of Action

### (Fraudulent Misrepresentation and Fraud in the Inducement)

### TIMM against Metagenics

24. The allegations made in all preceding paragraphs are realleged and incorporated by reference herein.

25. In the District of Columbia, the elements of fraudulent misrepresentation are: "(1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation." *Atraqchi v. GUMC Unified Billing Servs.*, 788 A.2d 559, 563 (D.C. 2002).

26. Here, Defendants have continued to make the false representation that the products were "practitioner exclusive". Defendant has made this statement directly on the label, the entire time, since Plaintiff began selling Defendant's products in 2011. The misrepresentation is also listed on their website, upon information and belief, for the past year.

27. This is a misrepresentation, because Metagenics is actually selling the products on Amazon and, thus, the products are not "practitioner exclusive".

28. This misrepresentation is deceptive and was made with the intent to deceive.

29. Plaintiff TIMM, in reliance of the statements by Metagenics that the product was "practitioner exclusive", initially signed-up to sell products with Metagenics.

30. Plaintiff TIMM continued promoting and selling, in reliance of Metagenics continued statements that the products were "practitioner exclusive".

31. The fact that Metagenics is selling the product on Amazon in direct contradiction to their oath to be "practitioner exclusive" has caused significant damage to Plaintiff's representation and has damaged Plaintiff's business. Plaintiff has experienced a significant loss in business due to Metagenics's misrepresentations.

32. By reason of the foregoing, Defendant Metagenics is liable to Plaintiff for damages of $2,400,000 in compensatory damages, the exact amount to be proved at trial, and $1,000,000 in punitive damages, and an order enjoining Metagenics, Inc. from selling practitioner exclusive products directly to consumers, including online.

## Second Cause of Action

### (Breach of Contract)

### TIMM against Metagenics

33. The allegations made in all preceding paragraphs are realleged and incorporated by reference herein.

34. By failing to adhere to the direct terms of their agreement, as outlined in promotional materials that defined the offer to Defendant and as outlined in the new account form, Defendant has breached its contract with Plaintiff, thereby causing Plaintiff monetary damages.

35. There was an offer as described in the promotional materials and as clearly outlined in the new account form that was offered by Defendant and signed by Plaintiff.

36. The offer was for "practitioner exclusive" supplements and services.

37. Plaintiff accepted the offer by signing the new account form.

38. Defendant breached by failing to adhere to the express terms as outlined in the offer made by Defendant and accepted by Plaintiff.

39. The offer was bound by consideration, as Plaintiff paid Defendant to fulfill the orders.

40. This was a resale contract that Defendant breached by not holding up the objective terms of the agreement.

41. Plaintiff has experienced a significant loss in business due to Metagenics's breach.

42. By reason of the foregoing, Defendant Metagenics is liable to Plaintiff for damages of $2,400,000 in compensatory damages, the exact amount to be proved at trial, and $1,000,000 in punitive damages, and an order enjoining Metagenics, Inc. from selling practitioner exclusive products directly to consumers, including online.

### Third Cause of Action
### (Negligent Misrepresentation)
### TIMM against Metagenics

43. The allegations made in all preceding paragraphs are realleged and incorporated by reference herein.

44. The District of Columbia follows the Restatement (Second) of Torts for negligent misrepresentation. *See Remeikis v. Boss & Phelps, Inc.*, 419 A. 2d 986, 991 (1980).

45. The elements to be proved for negligent misrepresentation are set forth in the Restatement as follows:

> "§ 552. Information Negligently Supplied for the Guidance of Others
>
> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.[Restatement (Second) of Torts § 552 (1977). *See also id.*

46. Here, Defendant has continued to make the false representation that the products were "practitioner exclusive".

47. In the alternative if this false representation was not made to intentionally deceive, it was made negligently.

48. Defendant is liable for the significant damage caused to Plaintiff's business, including economic loss and reputational damage, as a result of the negligent misrepresentations.

5

49. Contractual privity between the parties can suffice to show a "close" or "intimate nexus" and, thus, a "special relationship" to defeat the economic loss doctrine.
*Heidi Aviation, LLC v. Jetcraft Corp.*, No. CV 20-1773 (CKK), 2021 WL 5310710, at *11 (D.D.C. Nov. 15, 2021). Contractual privity and the parties fiduciary relationship is described above and in the Breach of Fiduciary Duty Cause of Action on Page 8 of this document.

50. By reason of the foregoing, Defendant Metagenics is liable to Plaintiff for damages of $2,400,000 in compensatory damages, the exact amount to be proved at trial, and $1,000,000 in punitive damages, and an order enjoining Metagenics, Inc. from selling practitioner exclusive products directly to consumers, including online.

## Fourth Cause of Action

### (Breach of the Duty of Good Faith and Fair Dealing)

### TIMM against Metagenics

51. The allegations made in all preceding paragraphs are realleged and incorporated by reference herein.

52. It is settled in the District of Columbia that there is an implied duty of good faith and fair dealing in every contract that requires every party to a contract to do nothing "which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Paul v. Howard Univ.*, 754 A. 2d 297, 310 (D.C. 2000); *Hais v. Smith*, 547 A. 2d 986, 987.

53. The misrepresentations made by Metagenics is in direct violation of the terms of the contract and have destroyed the right of Plaintiff to receive the fruits of the contract.

54. Defendant is liable for the significant damage caused to Plaintiff's business due to the breach of the duty of good faith and fair dealing.

55. By reason of the foregoing, Defendant Metagenics is liable to Plaintiff for damages of $2,400,000 in compensatory damages, the exact amount to be proved at trial or on summary judgment and an order enjoining Metagenics, Inc. from selling practitioner exclusive products directly to consumers, including online.

## Fifth Cause of Action

### (Unjust Enrichment)

### TIMM against Metagenics

56. The allegations made in all preceding paragraphs are realleged and incorporated by reference herein.

57. "Unjust enrichment occurs when: (1) a plaintiff conferred a benefit on the defendant; (2) the defendant retains that benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *Euclid St., LLC v. District of Columbia Water and Sewer Auth.* 41 A.3d 453, 463 n.10 (D.C. 2012) (internal quotations omitted).

Plaintiff conferred the benefit of selling defendant's products. Defendant's misrepresentations have caused significant damage to Plaintiff's business. Defendant has retained the benefit of selling on Amazon despite these misrepresentations and harm caused to Plaintiff's business.

58. Defendant's retention of the benefit from Defendant's misrepresentations is unjust in this case.

59. By reason of the foregoing, Defendant Metagenics is liable to Plaintiff for damages of $2,400,000 in compensatory damages, the exact amount to be proved at trial, and $1,000,000 in punitive damages, and an order enjoining Metagenics, Inc. from selling practitioner exclusive products directly to consumers, including online.

### Sixth Cause of Action

### (Breaches of Express Warranty, Implied Warranty of Merchantability)

### TIMM against Metagenics

60. The allegations made in all preceding paragraphs are realleged and incorporated by reference herein.

61. While a seller of goods may create a warranty in multiple ways, the basic elements of any claim for breach of warranty are (1) the existence of an express or implied warranty, (2) the goods did not comply with that warranty, and (3) the failure to comply with the warranty caused an injury.

62. A warranty is a statement or representation, made by a seller of goods as a part of a contract of sale, concerning the character, quality, or title of goods.

63. The elements of a claim for breach of express warranty under UCC §2-313, codified at D.C. Code § 28:2-313 are as follows: a. There was a sale of goods. b. There was an affirmation of fact or promise about the quality of the goods, or a sample or model was provided. c. The promise or affirmation (or sample or model) was part of the basis of the bargain. d. The goods were not as warranted. e. The buyer provided the seller notice of breach of warranty. f. An economic loss or personal injury occurred as a result of the breach of warranty.

64. The District of Columbia codifies the U.C.C's Implied Warranty of Merchantability at D.C. Code § 28: 2–314.

65. The law states that "Goods to be merchantable must be at least such as . . . conform to the promises or affirmations of fact made on the container or label if any." D.C. Code § 28:2–314 (2)(f).

66. In this case, the goods provided to Plaintiff were not merchantable because the medical food did not conform to the express promises or affirmations of fact made on the container or label.

67. The goods were not "practitioner exclusive" as labeled.

68. Defendant breached the express warranties causing economic loss to defendant.

69. Because the goods were not "practitioner exclusive" as promised and labeled, Plaintiff suffered significant economic loss.

70. A significant breach of the manufacturer's warranty, left TIMM with no remedy thus failing its essential purpose; TIMM is entitled to all its damages, including consequential damages, and attorney fees.

71. By reason of the foregoing, Defendant Metagenics is liable to Plaintiff for damages of $2,400,000 in compensatory damages, the exact amount to be proved at or before trial, and $1,000,000 in punitive damages, and an order enjoining Metagenics, Inc. from selling practitioner exclusive products directly to consumers, including online

### Eighth Cause of Action
### (Breach of Fiduciary Duty)

### TIMM against Metagenics

72. To state a claim for breach of fiduciary duty a plaintiff "must allege facts sufficient to show (1) the existence of a fiduciary relationship; (2) a breach of the duties associated with the fiduciary relationship; and (3) injuries that were proximately caused by the breach of fiduciary duties." *Heidi Aviation, LLC v. Jetcraft Corp.*, No. CV 20-1773 (CKK), 2021 WL 5310710, at 16 (D.D.C. Nov. 15, 2021).

73. "[A] fiduciary relationship is founded upon trust or confidence reposed by one person in the integrity and fidelity of another." *Id.*

74. District of Columbia courts have "deliberately left the definition of a 'fiduciary relationship' open-ended, allowing the concept to fit a wide array of factual circumstances... District of Columbia law has deliberately left the definition of 'fiduciary relationship' flexible, so that the relationship may change to fit new circumstances in which a special relationship of trust may properly be implied." *Id.*

75. To decide whether a fiduciary relationship exists, a court must conduct "a searching inquiry into the nature of the relationship, the promises made, the types of services given and the legitimate expectations of the parties." *Id.*

8

76. The relationship between IMM and Metagenics extended beyond the limited of their contractual relationship to a relationship founded upon trust and confidence. IMM trusted Metagenics to deliver quality medical grade products for its customers.

77. IMM and Metagenics had a long-standing business relationship.

78. IMM relied and trusted Metagenics when it came to medical grade food to provide to its patients.

79. Metagenics was founded "to help the Practitioner fulfill their oath". "Together we share the same goal, one patient at a time." Metagenics, *Your Oath to Heathcare, Your Oath to the World, Our Oath to you: Practicioner-exclusive supplements and services* (Apr. 8, 2022, 10:34am), http://www.metagenics.com.

80. Metagenics stated on their website, "You work hard to earn your patients' trust. We don't take that lightly. We build evidence-based formulas and let you see exactly what's inside. That's transparency you can trust." *Id.*

81. Metagenics stated on their website, in big letters, "Your Oath to Healthcare, Your Oath to the World, Our Oath to you: *Practitioner-exclusive* supplements and services" *Id.*

82. Metagenics also promised: "Our oath to you: Practitioner-exclusive supplements and services." *Id.*

83. Metagenics entitled the relationship "practitioner partnerships".

84. A fiduciary relationship was built between Metagenics and IMM that was built upon trust, the promises made, and the legitimate expectations of the parties.

85. IMM trusted Metagenics' integrity when supplying Metagenics' medical grade food to their patients.

86. Metagenics breached their duty to provide practitioner-exclusive supplements and services, as directly promised as evidenced in "their oath" to IMM.

87. IMM was injured by the breach of fiduciary duties. The action of providing the supplements beyond the practitioner network caused reputational damage and economic loss to IMM. The breach of the fiduciary duty to provide the practitioner supplements and ceasing to do so without notice caused damage to IMM's ability to provide continuity of care; this created not only damage to IMM's business, but also health risk and consequences for IMM's patients.

### The Institute of Multidimensional Medicine's Attorney's Fees

88. Plaintiff The Institute of Multidimensional Medicine is entitled to attorney's fees as the new account form specially states that "if any legal action is instituted to enforce any provision

9

of this agreement between parties, the prevailing party shall be entitled to recover its attorney's fees, costs and reasonable expenses incurred in such action." *See* Exhibit A, Page 2, Paragraph (6).

89. The Court should award attorney's fees as Metagenics has also breached the duty of good faith and fair dealing which has injured the right of TIMM to receive the fruits of the contract; Defendant has also violated the agreement by not providing 10 days before canceling the contract.

90. As the express terms of the contract state that attorney's fees will be awarded, the Court should award attorney's fees to the Institute of Multidimensional Medicine.

### **Jury Demand**

Plaintiff demands a jury trial on all issues.

### **Prayer for Relief**

Metagenics is selling the products on Amazon, in direct contradiction to their oath to be "practitioner exclusive" and has caused significant damage to Plaintiff TIMM's representation and has damaged Plaintiff TIMM's business. Plaintiff TIMM has experienced a significant loss in business due to Metagenic's misrepresentations.

Plaintiff TIMM lost out on business because these were supposed to be provider exclusive sales, but Metagenics actually was warehousing them and selling them without the involvement of providers, cutting out the providers from the sales. Providers were not getting the exclusive access to sell the medical foods, which was part of the contract. This was dangerous to consumers who should have been using this medical food under the care of a provider.

WHEREFORE Plaintiff TIMM respectfully requests an entry of judgment against Defendant for damages in the amount of $2,400,000 in compensatory damages, the exact amount to be proved at trial or on motion for summary judgment, and $1,000,000 in punitive damages, and an order enjoining Metagenics, Inc. from selling practitioner exclusive products directly to consumers, including online, plus attorney's fees, and for such other and further relief as this Honorable Court deems just and proper.

Dated: April 8, 2022
Washington, DC

/s/ *Amy E. Norris*, 1017140
NORRIS LAW, PLLC
616 E Street N.W.

Suite 1156  
Washington, DC, 20004  
Amy@norrislawgroup.org  
202-830-1225  
Counsel for Plaintiff

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Telephone: (202) 879-1133 • Website: www.dccourts.gov

THE INSTITUTE OF MULTIDIMENSIONAL MEDICINE
   Vs.                                        C.A. No.    2022 CA 001535 B
METAGENICS, INC.

## INITIAL ORDER AND ADDENDUM

**Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby ORDERED as follows:**

(1) This case is assigned to the judge and calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of (a) the summons, (b) the complaint, and (c) this Initial Order and Addendum. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4(m).

(3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

(4) At the time stated below, all counsel and unrepresented parties shall participate in a remote hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients **before** the hearing whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this hearing.**

(5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

                                                          **Chief Judge Anita M. Josey-Herring**

Case Assigned to: Judge HEIDI M PASICHOW
Date:      April 12, 2022
Initial Conference: **REMOTE HEARING - DO NOT COME TO COURTHOUSE**
**SEE REMOTE HEARING INSTRUCTIONS ATTACHED TO INITIAL ORDER**

9:30 am, Friday, July 15, 2022
Location:  Courtroom 516
           500 Indiana Avenue N.W.
           WASHINGTON, DC 20001

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

D.C. Code § 16-2821, which part of the Medical Malpractice Proceedings Act of 2006, provides, "[a]fter action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ('ISSC'), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC."

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. Unrepresented plaintiffs who elect not to eFile must either mail the form to the Multi-Door Dispute Resolution Office at, Suite 2900, 410 E Street, N.W., Washington, DC 20001, or deliver if in person if the Office is open for in-person visits.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following people are required by D.C. Code § 16-2824 to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826. Any Plaintiff who is unrepresented may mail the form to the Civil Actions Branch at [address] or deliver it in person if the Branch is open for in-person visits. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Anita M. Josey-Herring

## Civil Remote Hearing Instructions for Participants

The following instructions are for participants who are scheduled to have cases heard before a Civil Judge in a **Remote Courtroom**

### Option1: (AUDIO ONLY/Dial-in by Phone):

Toll 1 (844) 992-4762 or (202) 860-2110, enter the Meeting ID from the attachment followed by #, press again to enter session.

- *Please call in no sooner than 5 minutes before your scheduled hearing time. Once you have joined the session, please place your phone on mute until directed otherwise. If you should happen to get disconnected from the call, please call back in using the phone number and access number provided and the courtroom clerk will mute your call until the appropriate time.*

If you select **Option 2** or **Option 3** use the Audio Alternative

### Option 2: (LAPTOP/ DESKTOP USERS 1):

Open Web Browser in Google Chrome and copy and paste following address from the next page: https://dccourts.webex.com/meet/XXXXXXXXX

### Option 3: (LAPTOP/ DESKTOP USERS 2):

Open Web Browser in Google Chrome and copy and paste following address https://dccourts.webex.com  Select **Join**, enter the Meeting ID from the next page

AUDIO ALTERNATIVE: Instead of automatically using **USE COMPUTER FOR AUDIO**, select **CALL-IN** and follow the **CALL-IN** prompt window. Use a cell phone or desk phone. You will be heard clearer if you **do not** place your phone on SPEAKER. It is very important that you enter the **ACCESS ID #** so that your audio is matched with your video.



### Option 4: (Ipad/SMART PHONE/TABLET):

- Go to App Store, Download WebEx App (Cisco WebEx Meetings)
- Sign into the App with your Name and Email Address
- Select Join Meeting
- Enter address from the next page: https://dccourts.webex.com/meet/XXXXXXXXX
- Click join and make sure your microphone is muted and your video is unmuted (if you need to be
- seen). If you only need to speak and do not need to be seen, use the audio only option.
- When you are ready click "Join Meeting". If the host has not yet started the meeting, you will be placed in the lobby until the meeting begins.

**For Technical Questions or issues Call: (202) 879-1928, Option #2**

Superior Court of the District of Columbia
Public Access for Remote Court Hearings
(Effective August 24, 2020)

**The current telephone numbers for all remote hearings are: 202-860-2110 (local) or 844-992-4726 (toll free).** After dialing the number, enter the WebEx Meeting ID as shown below for the courtroom. Please click a WebEx Direct URL link below to join the hearing online.

Audio and video recording; taking pictures of remote hearings; and sharing the live or recorded remote hearing by rebroadcasting, live-streaming or otherwise are not allowed

| Division | Courtroom | Types of Hearings Scheduled in Courtroom | Public Access via WebEx | |
|---|---|---|---|---|
| | | | **WebEx Direct URL** | **WebEx Meeting ID** |
| Auditor Master | 206 | Auditor Master Hearings | https://dccourts.webex.com/meet/ctbaudmaster | 129 648 5606 |
| Civil | 100 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb100 | 129 846 4145 |
| | 205 | Foreclosure Matters | https://dccourts.webex.com/meet/ctb205 | 129 814 7399 |
| | 212 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb212 | 129 440 9070 |
| | 214 | Title 47 Tax Liens; and Foreclosure Hearings | https://dccourts.webex.com/meet/ctb214 | 129 942 2620 |
| | 219 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb219 | 129 315 2924 |
| | 221 | Civil 1 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb221 | 129 493 5162 |
| | 318 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb318 | 129 801 7169 |
| | 320 | | https://dccourts.webex.com/meet/ctb320 | 129 226 9879 |

| | | | |
|---|---|---|---|
| 400 | Judge in Chambers Matters including Temporary Restraining Orders, Preliminary Injunctions and Name Changes | https://dccourts.webex.com/meet/ctb400 | 129 339 7379 |
| 415 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb415 | 129 314 3475 |
| 516 | | https://dccourts.webex.com/meet/ctb516 | 129 776 4396 |
| 517 | | https://dccourts.webex.com/meet/ctb517 | 129 911 6415 |
| 518 | | https://dccourts.webex.com/meet/ctb518 | 129 685 3445 |
| 519 | | https://dccourts.webex.com/meet/ctb519 | 129 705 0412 |
| JM-4 | | https://dccourts.webex.com/meet/ctbjm4 | 129 797 7557 |
| A-47 | Housing Conditions Matters | https://dccourts.webex.com/meet/ctba47 | 129 906 2065 |
| B-52 | Debt Collection and Landlord and Tenant Trials | https://dccourts.webex.com/meet/ctbb52 | 129 793 4102 |
| B-53 | Landlord and Tenant Matters including Lease Violation Hearings and Post Judgment Motions | https://dccourts.webex.com/meet/ctbb53 | 129 913 3728 |
| B-109 | Landlord and Tenant Matters | https://dccourts.webex.com/meet/ctbb109 | 129 127 9276 |
| B-119 | Small Claims Hearings and Trials | https://dccourts.webex.com/meet/ctbb119 | 129 230 4882 |