IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| The Institute of Multidimensional Medicine | : <br> : <br> : |
| Plaintiff | :    Case No: 1:21-cv-01308-JEB <br> : <br> : <br> : |
| v. | : <br> : |
| Metagenics, Inc. | : <br> : |
| Defendant. | : |

**OPPOSITION TO MOTION TO DISMISS**

The Institute of Multidimensional Medicine ("TIMM"), through its undersigned attorney, hereby opposes Metagenics' Motion to Dismiss filed by Metagenics, Inc. and states as follows:

Dismissal is not appropriate as The Institute of Multidimensional Medicine can prove a set of facts which would entitle it to relief. This Court should accept all well-pleaded factual allegations and should draw all reasonable inferences in favor of the Plaintiff, in this case, The Institute of Multidimensional Medicine. The Institute of Multidimensional Medicine has listed in its pleading egregious deceptive misrepresentations, which occurred before it entered into an agreement with Metagenics to sell Metagenics products. D.C. Courts have found that deceptive misrepresentations that occur before the parties enter into a contract are grounds for a distinct misrepresentation claims, separate from a breach of contract claim.

1

D.C. Courts have found that defendants have "sufficiently alleged claims for fraudulent and negligent misrepresentation . . and breach of contract", based on alleged misrepresentations and omissions made "pre-contract". *Jacobson v. Hofgard,* 168 F. Supp. 3d 187 (D.D.C. 2016). The misrepresentations, made by Metagenics, were made "pre-contract" and are separate from the breach of contract claims.

The law in D.C. states that implied warranty of merchantability requires that the goods conform to the promises or affirmations of facts made on the container or label. D.C. Code § 28:2–314 (f). The "practitioner exclusive" label was a promise or affirmation of fact made on the container of the products sold to Metagenics. However, the products did not conform to the label. Metagenics sold directly on Amazon to patients, without a practitioner; thus the products were not "practitioner exclusive". Metagenics breached the implied warranty of merchantability under the D.C. law codified at § 28:2–314 (f).

As TIMM's claims are adequately pled in the Complaint, the Court should deny Metagenics' Motion to Dismiss.

Respectfully submitted,

*/s/ Amy E. Norris*
Bar Number: 1017140
Amy@norrislawgroup.org
202-830-1225
NORRIS LAW, PLLC
616 E Street N.W.
Suite 1156

Washington, DC, 20004

## PLAINTIFF'S MEMORANDUM OF OPPOSING POINTS AND AUTHORITIES IN OPPOSITION OF DEFENDANT'S MOTION TO DISMISS

**I.     Standard of Review**

To evaluate a motion to dismiss, the court should "treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citation and internal quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Although "detailed factual allegations" are not necessary to withstand a motion to dismiss failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). For a complaint to survive a 12(b)(6) motion, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

**II.  Dismissal pursuant to Fed.R.Civ.P. 12(b)(6) is not proper as the Institute of Multidimensional Medicine has Adequately Pled its Claims, which are Plausible.**

    **a. The misrepresentations inducing Plaintiff to enter into the contract are separate from the contract; thus the fraudulent misrepresentations claims and negligent misrepresentation claims are separate and distinct from the breach of contract claims.**

Plaintiff TIMM states in the complaint that "Plaintiff TIMM, in reliance of the statements by Metagenics that the product was 'practitioner exclusive', initially signed-up to sell product with Metagenics." This describes that the misrepresentation pre-dated the contract.

As this Court decided in *Jacobson*, a defendant can "sufficiently alleged claims for fraudulent and negligent misrepresentation . . and breach of contract", based on alleged misrepresentations and omissions made "**pre-contract**". *Jacobson v. Hofgard*, 168 F. Supp. 3d 187 (D.D.C. 2016). The fraud claims that the courts have accepted along with breach of contract claims are misrepresentations that have been made before the contract has been entered into. Here the misrepresentations pre-date the contract and induced Plaintiff to enter into the contract with the Defendant. Further, the misrepresentations continued for the duration of the contract as advertised on Metagenics' website and continue to this

4

day. As Plaintiff TIMM has sufficiently alleged the fraudulent misrepresentation claims (or in the alternative negligent representation claims) that are separate from the contract, the Court should deny Metagenics' Motion to Dismiss.

The timing of the misrepresentations occurred before the contract occurred, in addition to the duration of the contract. The action of selling on Amazon, under the "practitioner exclusive" assurances and label is misconduct that is distinct from the terms of the contract.

The crux of Plaintiff TIMM's breach of contract claim is that Defendant breached the express terms as outlined in the new account form. The new account form specifically states the process by which a customer's account will be suspended. Metagenics violated that term of the contract by not giving Plaintiff TIMM a ten (10) day notice period. See allegation 16 in Complaint, 3. Metagenics immediately canceled Plaintiff TIMM's account without any written warning and in direct violation of the terms of the contract. This is specifically stated in the Complaint and thus, Plaintiff TIMM has given Defendant Metagenics notice about its claims. The new account form is a document that outlines the obligations of the parties to the agreement, and it is a document that is in Metagenics' possession.

Metagenics possessed a duty, independent of the contract, to make truthful representations about the product. *See Jacabson v. Hofgard*, 168 F. Supp. 3d 197, (D.D.C. 2016) (Defendants . . . possessed a duty, independent of the sales contract, to make truthful representations about the property" advertised for sale); See also *Morris v. Achen Constr. Co.*, 155 Ariz. 512, 747 P.2d 1211, 1212–13 (1987)

(stating, in answer to the question "whether the fraud action between A and B is an action 'arising out of contract' because the alleged fraud caused A to enter into a contract with C," that "[t]he duty not to commit fraud is obviously not created by a contractual relationship and exists ... even when there is no contractual relationship between the parties at all."); *see also, e.g., Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 880 (9th Cir. 2007) (defendant "had an independent 'duty imposed by law' not to commit fraud, a duty not 'arising by virtue of the alleged express agreement between the parties' "). Metagenics did not make truthful representations about their product, which enticed Plaintiff TIMM to enter into the contract and caused damage to Plaintiff TIMM. These deceptive misrepresentations pre-dated and are separate from agreement made in the new account form.

Further, alternative claims are allowed, and Metagenics should be allowed to keep the misrepresentations claims in the event that the Court decides that the labeling was not a formal part of the contract. The "practitioner exclusive" labeling is false and it is inducing many doctors to enter into selling agreements with Metagenics. This Court should deny Metagenics' Motion to Dismiss.

### b. TIMM identifies specific provisions of the contract that were breached in sufficient detail to bring a breach of contract claim.

TIMM cites specific provisions of the contract in its Complaint, the sections that Defendant breached. For example, allegation 16 of the Complaint, states that:

6

> Under the terms of the agreement between TIMM and Metagenics, as specified under the new account form, under "Internet Policy", the agreement states that a practitioner "who violate[s] [Metagenic's Policy] will receive 10 days' advance written notice from Metagenics that they are in violation of the Policy and therefore will not be able to purchase the Products after the end of the (10) day notice period" . . . after coming into "compliance with this Policy, [the practitioner ] should promptly notify Metagenics . . . if [Practitioner] has brought his or her site into compliance with this Policy, Customer's account will be reactivated. (Exhibit A, 4.)

Allegation 17 states that no written or verbal notice was given to TIMM, before Metagenics immediately canceled their account.

> Allegation 18 states another specific provision of the contract.
>
> Further, if there was a misunderstanding, the terms of the engagement specifically stated that Metagenics "desires to avoid any and all misunderstandings between [resellers] and itself regarding the terms and obligation of orders by its [resellers]. (*Id.* at 3).

Plaintiff TIMM has alleged specific detail about the contract to bring a breach of contract claim, and the Court should deny Defendant's Motion to Dismiss.

For the breach of good faith claim, per *Jacobson v. Hofgard*, 168 F.Supp 3d 187, for contract claims, plaintiffs aren't required at the pleadings stage to choose between alternative remedies, even if the claims are essentially identical. See also *Paulin v. George Washington Univ. Sch. of Med. & Health Scis.*, 878 F. Supp. 2d 241, 248 (D.D.C. 2012).

DC courts allow breach of the implied duty of good faith to be a separate independent claim from breach of contract. *See Jacobson v. Hofgard*, 168 F.Supp 3d

7

187; *Paulin v. George Washington Univ. Sch. of Med. & Health Scis.*, 878 F. Supp. 2d 241, 248 (D.D.C. 2012). *See also C & E Servs., Inc. v. Ashland Inc.*, 601 F. Supp. 2d 262 (D.D.C. 2009) (holding that the issue of whether the manufacturer breach implied duty of good faith and fair dealing was for a jury).

A party breaches the duty of good faith by "evad[ing] the spirit of the contract, willfully rendering imperfect performance, or interfering[ing] with performance by the other party." *Id*. This is especially relevant here, where Metagenics evaded the spirit of the contract to provide "practitioner exclusive" products by their action of selling on Amazon to the general public, who did not have a relationship with a practitioner. The Court should deny Defendant's Motion to Dismiss the breach of implied duty of good faith a fair dealing claim and breach of contract, as those claims have been adequately pled.

### c. Unjust enrichment can be plead in the alternative to the breach of contract claim.

A plaintiff may pursue an unjust enrichment claim as an alternative theory of liability even though the plaintiff cannot ultimately recover on both a breach of contract claim and an unjust enrichment claim, pertaining to the subject matter of the contract. *Smith v. Rubicon Advisors, LLC*, 254 F. Supp. 3d 245, 250 (D.D.C. 2017). Without this rule, a plaintiff could be left without any remedy should the fact-finder determine at a later stage there was no express agreement between the parties. *Id. See also McWilliams Ballard, Inc. v. Broadway Mgmt. Co.*, 636 F.Supp.2d 1, 9 n.10 (D.D.C. 2009) (collecting citations); *see also Adm'rs of*

*the Tulane Educ. Fund v. Ipsen Pharma, S.A.S.*, 771 F.Supp.2d 32, 41 (D.D.C. 2011) ("It is difficult to see why, if [the plaintiff's] claim is successful, it would not be adequately compensated through that contract. However, at this stage of the litigation, plaintiffs are entitled to plead an inconsistent theory and, making all inferences in their favor, they have successfully stated an unjust enrichment claim."); Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses it has, regardless of consistency.").

As unjust enrichment can be plead in the alternative, the Court should deny Metagenics' Motion to Dismiss.

### d. TIMM sufficiently alleged Breach of Warranty; and it did notify Metagenics of the Alleged Breach

The D.C. Code specifically states in regard to breach of warranty: "Goods to be merchantable must be at least such as . . . conform to the promises or affirmations of fact made on the container or label if any." D.C. Code § 28:2–314 (2)(f). The practitioner exclusive label did not conform to the promises or affirmations of fact made on the container. Those goods were then sold to TIMM in violation of the law concerning the warranty of merchantability.

"Practitioner exclusive" absolutely describes the character of the product and the serious nature of the product. "Practitioner exclusive" is a warranty that goes to

9

the character of the product. The quality of the product is clearly not "practitioner exclusive", as warranted, if Metagenics is selling directly on Amazon.

Metagenics had reasonable actual and constructive notice that it was in breach of warranty. As soon as Ahmed Mines discovered that Metagenics was selling on Amazon, Mr. Mines made his Metagenics representative, Tom Southward, aware of the violation of the practitioner-exclusive label. This notice occurred in a meeting on January 12, 2022 at or around 9 am. Dr. Mines gave notice on February 10, 2022 in an e-mail to Metagenics. Anna Nathanson, counsel for TIMM, gave notice on February 21, 2022. Also, as Metagenics was selling on Amazon, they obviously knew that they were in violation of their "practitioner exclusive" label. Metagenics had reasonable actual and constructive notice for breach of warranty.

### e. Fiduciary duty

TIMM does allege facts necessary for a breach of fiduciary duty claim. The Complaint states that Metagenics entitled the relationship "practitioner partnerships" and made specific oaths that went beyond the commercial interactions expected between a buyer and a seller. Metagenics' website specifically states that Metagenics was founded "to help the Practitioner fulfill their oath". "Together we share the same goal, one patient at a time." Metagenics, *Your Oath to Healthcare, Your Oath to the World, Our Oath to you: Practitioner-exclusive*

*supplements and services* (Apr. 8, 2022, 10:34am), http://www.metagenics.com. The oaths made by Metagenics to assist practitioners in fulfilling their oaths, combined with the long-term relationship between Metagenics and TIMM, created a fiduciary relationship.

    To state a claim for breach of fiduciary duty a plaintiff "must allege facts sufficient to show (1) the existence of a fiduciary relationship; (2) a breach of the duties associated with the fiduciary relationship; and (3) injuries that were proximately caused by the breach of fiduciary duties." *Heidi Aviation, LLC v. Jetcraft Corp.,* No. CV 20-1773 (CKK), 2021 WL 5310710, at 16 (D.D.C. Nov. 15, 2021.

    "[A] fiduciary relationship is founded upon trust or confidence "reposed by one person in the integrity and fidelity of another". *Id.* This trust and confidence was induced by the oaths made by Megagenics to help the practitioners fulfill their oaths. The practitioners' oath is one of the most serious oaths that can be made. Metagenics' oath to help practitioners fulfill their oath, combined with the long-term relationship between Metagenics and TIMM created the fiduciary relationship.

    Trust was properly implied from the relationship. District of Columbia courts have "deliberately left the definition of a 'fiduciary relationship' open-ended, allowing the concept to fit a wide array of factual circumstances. . . District of Columbia law has deliberately left the definition of 'fiduciary relationship' flexible, so that the relationship may change to fit new circumstances in which a special

relationship of trust may properly be implied." *Id*. To decide whether a fiduciary relationship exists, a court must conduct "a searching inquiry into the nature of the relationship, the promises made, the types of services given and the legitimate expectations of the parties." *Id*. A fiduciary relationship was built between Metagenics and TIMM that was built upon trust, the promises made, and the legitimate expectations of the parties.

The breach of the fiduciary duty to provide the practitioner supplements and ceasing to do so without notice caused damage to TIMM's ability to provide continuity of care; this created not only damage to TIMM's business, but also health risk and consequences for TIMM's patients.

### III.  Conclusion

As the Institute of Multidimensional Medicine has adequately pled its claims and for all other reasons stated here, the Court should deny Defendant's Motion to Dismiss.

Respectfully submitted,

*/s/ Amy E. Norris*
Bar Number: 1017140
Amy@norrislawgroup.org
202-830-1225
NORRIS LAW, PLLC
616 E Street N.W.
Suite 1156
Washington, DC, 20004