IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Ahmad Mines FNP-C** | : | |
| **The Institute of Multidimensional Medicine,** | : | |
| D/B/A West End Apothecary | : | |
| 2311 M St NW | : | 22-1308 |
| Suite 202, | : | Case No: ~~1:21-cv-01308~~-JEB |
| Washington, DC | : | |
| 20037 | : | |
| | : | |
| v. | : | |
| | : | |
| **Metagenics, Inc.** | : | |
| 25 Enterprise | : | |
| Ste 200 | : | |
| Aliso Viejo, CA | : | |
| 92656-2713 | : | |

**FIRST AMENDED COMPLAINT**

1. Metagenics, Inc. manufactures, markets, labels and sells health nutritional supplements, represented as "practitioner exclusive".[1]



---

[1] Exhibit A includes other depictions of the practitioner exclusive label.

1

**Ask me about**

**PEA Relief™**

Designed to relieve minor pain.*
Featuring palmitoylethanolamide (PEA) and full-spectrum hemp.

Click here for more information

*These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease.

2.  The statements, "practitioner exclusive" tells medical practitioners (doctors, nurse practitioners, etc.) that the product will only be distributed from a practitioner's office.

3.  The Institute for Multidimensional Medicine ("TIMM") is a practitioner's office that engaged with Defendant to sell medical food health supplements.

4.  Defendant told TIMM that the products were medical grade products.

5.  Defendant labels the products as medical food.

6.  According to the U.S. Food and Drug Administration (the "FDA"), a medical food is "...a food which is formulated to be consumed or administered enterally **under the supervision of a physician** and which is intended for the specific dietary management of a disease or condition for which distinctive nutritional requirements, based on recognized scientific principles, are established by medical evaluation". Section 5(b)(3) of the Orphan Drug Act, 21 U.S.C. §360ee(b)(3) (emphasis added).

7.  Defendant told TIMM that the products were exclusive for "practitioner's office" and thus both "practitioner [and] exclusive" and "medical grade products".

8.  Defendant required TIMM to provide medical license information to sign-up and assigned TIMM a practitioner's code to purchase the products.

9.  Metagenics does not allow customers to purchase the products from the Metagenics website; the Metagenics website matches customers to a local provider for a medical recommendation. Metagenics states on their website that they partner "with functional and integrative healthcare providers."

10. Dr. Sakiliba Mines is a doctor who is the founder of the Institute for Multidimensional Medicine. Ahmad Mines is a family nurse practitioner and the current owner of TIMM.

11. During the pandemic, Dr. Mines was informed by her patients that Metagenics had begun selling the "practitioner exclusive" medical food on Amazon, despite still making claims on their website and product labeling that their products were "practitioner exclusive".

2

12. Metagenics had not previously sold on Amazon. When Defendant began this ongoing practice, they did not notify practitioners and continued to advertise products as practitioner exclusive and to solicit new practitioners to become distributors under false pretenses.

13. Due to the pandemic, and because Metagenics was already selling online on Amazon, and to try to mitigate any losses, Ahmad Mines of TIMM discussed with the Metagenics's local representative if he could begin selling the products on Amazon himself to his patients.

14. During a meeting on January 12, 2022 at 9 am, Tom Southward of Metagenics, Inc., Metagenics's representative for the mid-Atlantic region, stated that TIMM's selling the product on Amazon should not be an issue. The meeting was also attended by office manager Tayler Ables.

15. On or around February 9, 2022, Metagenics canceled the contract with TIMM unilaterally without any notice, in violation of their contract with TIMM; this not only hurt TIMM financially, but it also hurt their reputation, and it jeopardized the continuity of care for their patients.

16. Under the terms of the agreement between TIMM and Metagenics, as specified on the new account form, under "Internet Policy", the agreement states that a practitioner "who violate[s] [Metagenics's Policy] will receive ten (10) days' advance written notice from Metagenics that they are in violation of the Policy and therefore will no longer be able to purchase the Products after the end of the ten (10) day notice period" . . .after coming into "compliance with this Policy, [the practitioner] should promptly notify Metagenics. . . if [Practitioner] has brought his or her site into compliance with this Policy, Customer's account will be reactivated." (Exhibit B, 4.)

17. No written or verbal notice was given to TIMM, before Metagenics immediately canceled their account.

18. Further, if there was a misunderstanding, the terms of engagement specifically stated that Metagenics "desires to avoid any and all misunderstandings between [resellers] and itself regarding the terms and obligation of orders by its [resellers]." (*Id.* at 3).

19. TIMM, through Ahmad Mines and TIMM's attorney, promptly tried to reach out to Tom Southward and other Metagenics employees, but none of them were responsive.

20. TIMM also promptly notified Metagenics in writing of their compliance with the Policy, after ceasing selling on Amazon. (*See* Exhibit C).

21. To this date, TIMM has needed to fulfill continuity of care to its patients through the medical food, but it is no longer able to do so. Metagenics's misrepresentations and breach of contract has put the continuity of care of TIMM patients at jeopardy, caused reputational damage to TIMM, and has completely destroyed the benefit of the bargain for TIMM. The "practitioner exclusive" labeling was misleading and deceptive.

3

22. Defendant has been soliciting TIMM patients and fulfilling the orders of the TIMM patients without paying TIMM their commission; when TIMM patients contact Defendant about their inability to login with TIMM's information, Defendant has been fulfilling the orders of the TIMM patients without paying TIMM their commission and without the patients having established a relationship with a new practitioner.

### Jurisdiction and Venue

23. Jurisdiction is proper in this Court under D.C. Code § 11-921, D.C. Code § 13–423, and D.C. Code §28-3905(k)(1). Personal jurisdiction is proper under D.C. Code § 13-423(a)(1).

### First Cause of Action

**(Fraudulent Misrepresentation and Fraud in the Inducement)**

**TIMM against Metagenics**

24. The allegations made in all preceding paragraphs are realleged and incorporated by reference herein.
25. In the District of Columbia, the elements of fraudulent misrepresentation are: "(1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation." *Atraqchi v. GUMC Unified Billing Servs.*, 788 A.2d 559, 563 (D.C. 2002).
26. Here, Defendant has continued to make the false representation that the products were "practitioner exclusive". Defendant has made this statement directly on the label, the entire time, since Plaintiff began selling Defendant's products in 2011. The misrepresentation is also listed on their website, upon information and belief, for the past year.
27. This is a misrepresentation, because Metagenics is actually selling the products on Amazon and, thus, the products are not "practitioner exclusive".
28. This misrepresentation is deceptive and was made with the intent to deceive.
29. Plaintiff TIMM, in reliance of the statements by Metagenics that the product was "practitioner exclusive", initially signed-up to sell products with Metagenics.
30. Plaintiff TIMM continued promoting and selling, in reliance of Metagenics continued statements that the products were "practitioner exclusive".
31. It is plausible that Metagenics knew that it was going to sell its products on Amazon. Discovery will help to decipher Defendant's intent when making the misrepresentations that occurred before the contract. To this day, Metagenics continues to make the allegation that its products are "practitioner exclusive" while simultaneously directly selling on Amazon.
32. The fact that Metagenics is selling the product on Amazon in direct contradiction to their oath to be "practitioner exclusive" has caused significant damage to Plaintiff's reputation and has damaged Plaintiff's business. Plaintiff has experienced a significant loss in business due to Metagenics's misrepresentations.
33. By reason of the foregoing, Defendant Metagenics is liable to Plaintiff for damages of $2,400,000 in compensatory damages, the exact amount to be proved at trial, and

4

$1,000,000 in punitive damages, and an order enjoining Metagenics, Inc. from selling practitioner exclusive products directly to consumers, including online.

## Second Cause of Action

### (Breach of Contract)

### TIMM against Metagenics

34. The allegations made in all preceding paragraphs are realleged and incorporated by reference herein.
35. By failing to adhere to the direct terms of their agreement, as outlined in promotional materials that defined the offer to Plaintiff and as outlined in the new account form, Defendant has breached its contract with Plaintiff, thereby causing Plaintiff monetary damages.
36. There was an offer as described in the promotional materials and as clearly outlined in the new account form that was offered by Defendant and signed by Plaintiff.
37. The offer was for "practitioner exclusive" supplements and services.
38. Plaintiff accepted the offer by signing the new account form.
39. Defendant breached by failing to adhere to the express terms as outlined in the offer made by Defendant and accepted by Plaintiff.
40. The offer was bound by consideration, as Plaintiff paid Defendant to fulfill the orders.
41. This was a resale contract that Defendant breached by not holding up the objective terms of the agreement.
42. Plaintiff has experienced a significant loss in business due to Metagenics's breach.
43. By reason of the foregoing, Defendant Metagenics is liable to Plaintiff for damages of $2,400,000 in compensatory damages, the exact amount to be proved at trial, and $1,000,000 in punitive damages, and an order enjoining Metagenics, Inc. from selling practitioner exclusive products directly to consumers, including online.

## Third Cause of Action

### (Negligent Misrepresentation)

### TIMM against Metagenics

5

44. The allegations made in all preceding paragraphs are realleged and incorporated by reference herein.

45. The District of Columbia follows the Restatement (Second) of Torts for negligent misrepresentation. *See Remeikis v. Boss & Phelps, Inc.,* 419 A. 2d 986, 991 (1980).

46. The elements to be proved for negligent misrepresentation are set forth in the Restatement as follows:

    "§ 552. Information Negligently Supplied for the Guidance of Others

    (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.[Restatement (Second) of Torts § 552 (1977). *See also id*.

48. Here, Defendant has continued to make the false representation that the products were "practitioner exclusive".

49. In the alternative if this false representation was not made to intentionally deceive, it was made negligently.

50. Defendant is liable for the significant damage caused to Plaintiff's business, including economic loss and reputational damage, as a result of the negligent misrepresentations.

51. Contractual privity between the parties can suffice to show a "close" or "intimate nexus" and, thus, a "special relationship" to defeat the economic loss doctrine.
*Heidi Aviation, LLC v. Jetcraft Corp.,* No. CV 20-1773 (CKK), 2021 WL 5310710, at *11 (D.D.C. Nov. 15, 2021). Contractual privity and the parties fiduciary relationship is described above and in the Breach of Fiduciary Duty Cause of Action on Page 8 of this document.

52. By reason of the foregoing, Defendant Metagenics is liable to Plaintiff for damages of $2,400,000 in compensatory damages, the exact amount to be proved at trial, and $1,000,000 in punitive damages, and an order enjoining Metagenics, Inc. from selling practitioner exclusive products directly to consumers, including online.

### Fourth Cause of Action

### (Breach of the Duty of Good Faith and Fair Dealing)

### TIMM against Metagenics

53. The allegations made in all preceding paragraphs are realleged and incorporated by reference herein.

6

54. It is settled in the District of Columbia that there is an implied duty of good faith and fair dealing in every contract that requires every party to a contract to do nothing "which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Paul v. Howard Univ.,* 754 A. 2d 297, 310 (D.C. 2000); *Hais v. Smith*, 547 A. 2d 986, 987.

55. The misrepresentations made by Metagenics is in direct violation of the terms of the contract and have destroyed the right of Plaintiff to receive the fruits of the contract.

56. Defendant is liable for the significant damage caused to Plaintiff's business due to the breach of the duty of good faith and fair dealing.

57. By reason of the foregoing, Defendant Metagenics is liable to Plaintiff for damages of $2,400,000 in compensatory damages, the exact amount to be proved at trial or on summary judgment and an order enjoining Metagenics, Inc. from selling practitioner exclusive products directly to consumers, including online.

## Fifth Cause of Action

### (Unjust Enrichment)

### TIMM against Metagenics

58. The allegations made in all preceding paragraphs are realleged and incorporated by reference herein.

59. "Unjust enrichment occurs when: (1) a plaintiff conferred a benefit on the defendant; (2) the defendant retains that benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *Euclid St., LLC v. District of Columbia Water and Sewer Auth.* 41 A.3d 453, 463 n.10 (D.C. 2012) (internal quotations omitted).

60. Plaintiff conferred the benefit of selling defendant's products. Defendant's misrepresentations have caused significant damage to Plaintiff's business. Defendant has retained the benefit of selling on Amazon despite these misrepresentations and harm caused to Plaintiff's business.

61. Retention of the benefit from Defendant's misrepresentations is unjust in this case.

62. By reason of the foregoing, Defendant Metagenics is liable to Plaintiff for damages of $2,400,000 in compensatory damages, the exact amount to be proved at trial, and $1,000,000 in punitive damages, and an order enjoining Metagenics, Inc. from selling practitioner exclusive products directly to consumers, including online.

## Sixth Cause of Action

### (Breaches of Express Warranty, Implied Warranty of Merchantability)

## TIMM against Metagenics

63.     The allegations made in all preceding paragraphs are realleged and incorporated by reference herein.

64.     While a seller of goods may create a warranty in multiple ways, the basic elements of any claim for breach of warranty are (1) the existence of an express or implied warranty, (2) the goods did not comply with that warranty, and (3) the failure to comply with the warranty caused an injury.

65.     A warranty is a statement or representation, made by a seller of goods as a part of a contract of sale, concerning the character, quality, or title of goods.

66.     The elements of a claim for breach of express warranty under UCC §2-313, codified at D.C. Code § 28:2-313 are as follows: a. There was a sale of goods. b. There was an affirmation of fact or promise about the quality of the goods, or a sample or model was provided. c. The promise or affirmation (or sample or model) was part of the basis of the bargain. d. The goods were not as warranted. e. The buyer provided the seller notice of breach of warranty.  f. An economic loss or personal injury occurred as a result of the breach of warranty.

67.     The District of Columbia codifies the U.C.C's Implied Warranty of Merchantability at D.C. Code § 28: 2–314.

68.     The law states that "Goods to be merchantable must be at least such as . . . conform to the promises or affirmations of fact made on the container or label if any." D.C. Code § 28:2–314 (2)(f).

69.     In this case, the goods provided to Plaintiff were not merchantable because the medical food did not conform to the express promises or affirmations of fact made on the container or label.

70.     The goods were not "practitioner exclusive" as labeled.

71.     Defendant breached the express warranties causing economic loss to defendant.

72.     Because the goods were not "practitioner exclusive" as promised and labeled, Plaintiff suffered significant economic loss.

73.     A significant breach of the manufacturer's warranty, left TIMM with no remedy thus failing its essential purpose; TIMM is entitled to all its damages, including consequential damages, and attorney fees.

74. Metagenics had reasonable constructive notice that it was in breach of warranty. As soon as Ahmed Mines discovered that Metagenics was selling on Amazon, Mr. Mines made his representative Tom Southward aware that Metagenics was in violation of the practitioner-exclusive label. This notice occurred in a meeting on January 12, 2022 at 9 am. Dr. Mines gave notice on February 10, 2022 in an e-mail to Metagenics. Anna Nathanson, counsel for TIMM, gave notice on February 21, 2022. Also, as Metagenics was selling on Amazon, they obviously knew that they were in violation of their "practitioner exclusive" label. Metagenics had reasonable notice for breach of warranty.

75. By reason of the foregoing, Defendant Metagenics is liable to Plaintiff for damages of $2,400,000 in compensatory damages, the exact amount to be proved at or before trial, and $1,000,000 in punitive damages, and an order enjoining Metagenics, Inc. from selling practitioner exclusive products directly to consumers, including online.

### Seventh Cause of Action
### (Breach of Fiduciary Duty)

76. To state a claim for breach of fiduciary duty a plaintiff "must allege facts sufficient to show (1) the existence of a fiduciary relationship; (2) a breach of the duties associated with the fiduciary relationship; and (3) injuries that were proximately caused by the breach of fiduciary duties." *Heidi Aviation, LLC v. Jetcraft Corp.,* No. CV 20-1773 (CKK), 2021 WL 5310710, at 16 (D.D.C. Nov. 15, 2021).

77. "[A] fiduciary relationship is founded upon trust or confidence reposed by one person in the integrity and fidelity of another." *Id.*

78. District of Columbia courts have "deliberately left the definition of a 'fiduciary relationship' open-ended, allowing the concept to fit a wide array of factual circumstances. . . District of Columbia law has deliberately left the definition of 'fiduciary relationship' flexible, so that the relationship may change to fit new circumstances in which a special relationship of trust may properly be implied." *Id.*

79. To decide whether a fiduciary relationship exists, a court must conduct "a searching inquiry into the nature of the relationship, the promises made, the types of services given and the legitimate expectations of the parties." *Id*.

80. The relationship between TIMM and Metagenics extended beyond the limited of their contractual relationship to a relationship founded upon trust and confidence. TIMM trusted Metagenics to deliver quality medical grade products for its customers.

81. TIMM and Metagenics had a long-standing business relationship.

9

82. TIMM relied and trusted Metagenics when it came to medical grade food to provide to its patients.

83. Metagenics was founded "to help the Practitioner fulfill their oath". "Together we share the same goal, one patient at a time." Metagenics, *Your Oath to Heathcare, Your Oath to the World, Our Oath to you: Practicioner-exclusive supplements and services* (Apr. 8, 2022, 10:34am), http://www.metagenics.com.

84. Metagenics stated on their website, "You work hard to earn your patients' trust. We don't take that lightly. We build evidence-based formulas and let you see exactly what's inside. That's transparency you can trust." *Id.*

85. Metagenics stated on their website, in big letters, "Your Oath to Healthcare, Your Oath to the World, Our Oath to you: <u>Practitioner-exclusive</u> supplements and services*" Id.*

86. Metagenics also promised: "Our oath to you: Practitioner-exclusive supplements and services." *Id.*

87. Metagenics entitled the relationship "practitioner partnerships".

88. A fiduciary relationship was built between Metagenics and TIMM that was built upon trust, the promises made, and the legitimate expectations of the parties.

89. TIMM trusted Metagenics' integrity when supplying Metagenics' medical grade food to their patients.

90. Metagenics breached their duty to provide practitioner-exclusive supplements and services, as directly promised as evidenced in "their oath" to TIMM.

91. TIMM was injured by the breach of fiduciary duties. The action of providing the supplements beyond the practitioner network caused reputational damage and economic loss to TIMM. The breach of the fiduciary duty to provide the practitioner supplements and ceasing to do so without notice caused damage to TIMM's ability to provide continuity of care; this created not only damage to TIMM's business, but also health risk and consequences for TIMM's patients.

### The Institute of Multidimensional Medicine's Attorney's Fees

92. Plaintiff The Institute of Multidimensional Medicine is entitled to attorney's fees as the new account form specially states that "if any legal action is instituted to enforce any provision of this agreement between parties, the prevailing party shall be entitled to re-

10

cover its attorney's fees, costs and reasonable expenses incurred in such action." *See* Exhibit B, Page 2, Paragraph (6).

93. The Court should award attorney's fees as Metagenics has also breached the duty of good faith and fair dealing which has injured the right of TIMM to receive the fruits of the contract; Defendant has also violated the agreement by not providing 10 days before canceling the contract.

94. As the express terms of the contract state that attorney's fees will be awarded, the Court should award attorney's fees to the Institute of Multidimensional Medicine.

## Jury Demand

Plaintiff demands a jury trial on all issues.

## Prayer for Relief

Metagenics is selling the products on Amazon, in direct contradiction to their oath to be "practitioner exclusive" and has caused significant damage to Plaintiff TIMM's representation and has damaged Plaintiff TIMM's business. Plaintiff TIMM has experienced a significant loss in business due to Metagenic's misrepresentations.

Plaintiff TIMM lost out on business because these were supposed to be provider exclusive sales, but Metagenics actually was warehousing them and selling them without the involvement of providers, cutting out the providers from the sales. Providers were not getting the exclusive access to sell the medical foods, which was part of the contract. This was dangerous to consumers who should have been using this medical food under the care of a provider.

WHEREFORE Plaintiff TIMM respectfully requests an entry of judgment against Defendant for damages in the amount of $2,400,000 in compensatory damages, the exact amount to be proved at trial or on motion for summary judgment, and $1,000,000 in punitive damages, and an order enjoining Metagenics, Inc. from selling practitioner exclusive products directly to consumers, including online, plus attorney's fees, and for such other and further relief as this Honorable Court deems just and proper.

Dated: July 12, 2022
Washington, DC

/*Amy E. Norris,* 1017140
NORRIS LAW, PLLC
616 E Street N.W.

Suite 1156<br>
Washington, DC, 20004<br>
Amy@norrislawgroup.org<br>
202-830-1225<br>
Counsel for Plaintiff