## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INSTITUTE OF MULTIDIMENSIONAL MEDICINE        *Plaintiff*, <br><br> v. <br><br> METAGENICS, INC. <br><br>        *Defendant*. | ) ) ) ) ) ) ) ) ) ) ) )     Civil No. 1:22-cv-01308-JEB |

## **DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Defendant Metagenics, Inc. moves to dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). As explained in the accompanying Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss First Amended Complaint, the complaint should be dismissed because it fails to state a claim upon which relief can be granted.

Pursuant to Local Rule 7, a memorandum of points and authorities supporting this motion and a proposed order consistent with the relief requested herein are attached.

Metagenics respectfully requests an oral hearing on this Motion.

| | |
|---|---|
| Date: July 28, 2022 | Respectfully submitted, <br><br> /s/ Gordon D. Todd<br>Gordon D. Todd (D.C. Bar No. 475203)<br>Ellen Crisham Pellegrini (D.C. Bar No. 1002051)<br>SIDLEY AUSTIN LLP<br>1501 K Street, N.W.<br>Washington, D.C. 20005<br>(202) 736-8000<br><br>*Counsel for Defendant* |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of July 2022, I electronically filed the foregoing Motion to Dismiss First Amended Complaint with attachments with the Clerk of the Court. I also certify that a copy of the foregoing Motion to Dismiss First Amended Complaint with attachments was served, by the Court's electronic filing system, on the following counsel of record:

Amy E. Norris
NORRIS LAW, PLLC
616 E Street N.W.
Suite 1156
Washington, DC 20004
amy@norrislawgroup.org
(202) 830-1225

*Counsel for Plaintiff*

/s/ Gordon D. Todd
Gordon D. Todd (D.C. Bar No. 475203)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

*Counsel for Defendant*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INSTITUTE OF MULTIDIMENSIONAL MEDICINE<br><br>          *Plaintiff*,<br><br>     v.<br><br>METAGENICS, INC.<br><br>          *Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil No. 1:22-cv-01308-JEB |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Defendant Metagenics, Inc. ("Metagenics") respectfully submits this memorandum of points and authorities in support of its motion to dismiss the First Amended Complaint filed by Plaintiff the Institute of Multidimensional Medicine ("TIMM"). *See* ECF No. 14-1.

## I.  BACKGROUND

For over 30 years, Metagenics has manufactured nutritional products, dietary supplements, dietary ingredients, and medical foods intended to help patients achieve their health and wellness goals.  *See generally* www.metagenics.com (cited in First Am. Compl. ¶ 1).  In order to help these patients access the supplements they need, Metagenics often partners with practitioners across a variety of disciplines to sell and distribute Metagenics products.  *Id.*  TIMM, a Washington, D.C. business, is one such practitioner.  *Id.* ¶ 3.

In early 2022, TIMM began selling Metagenics products through Amazon.  In February 2022, Metagenics terminated its contract with TIMM on the grounds that TIMM's distribution through Amazon violated Metagenics' policies and TIMM's contractual arrangement.  *Id.* ¶ 15.

TIMM subsequently filed this action in the Superior Court for the District of Columbia. TIMM pleads that Metagenics had represented that its products would be "practitioner exclusive," which, TIMM purports, without citing to any support for its definition, means distributed through practitioners' offices only. *Id.* ¶¶ 1–2, 7. TIMM also pleads that Metagenics products are labeled as "medical food." *Id.* ¶¶ 4–7. TIMM asserts that Metagenics violated these "practitioner exclusive" and "medical food" labels when it began selling its products directly to customers through the online retailer Amazon during the COVID-19 pandemic.[1] *Id.* ¶ 11.

In its First Amended Complaint, TIMM asserts seven causes of action. Count 1 alleges that Metagenics committed fraudulent misrepresentations by stating that its products were "practitioner exclusive." *Id.* ¶ 26. Count 2 alleges that Metagenics breached its contract with TIMM. *Id.* ¶¶ 35–41. Count 3, which is an alternative to the claim of fraudulent misrepresentation in Count 1, alleges that Metagenics committed negligent misrepresentations by stating that its products were "practitioner exclusive." *Id.* ¶¶ 48–49. Count 4 alleges that Metagenics breached the duty of good faith and fair dealing. *Id.* ¶¶ 54–55. Count 5 alleges unjust enrichment. *Id.* ¶¶ 60–61. Count 6 alleges a breach of both an express warranty and the implied warranty of merchantability. *Id.* ¶¶ 65–73. Finally, Count 7 alleges that Metagenics breached its fiduciary duty to TIMM. *Id.* ¶¶ 80–90. TIMM demands $2.4 million in compensatory damages, $1 million in punitive damages, an order enjoining Metagenics from selling its "practitioner exclusive" products directly to consumers, and attorney's fees. *Id.* at 11.

---

[1] Despite the fact that its entire case rests on its manufactured definition of the term "practitioner exclusive," Plaintiff provides not a single source supporting it. Plaintiff further attempts to muddy the waters by using the terms "practitioner exclusive" and "medical food" interchangeably, without any explanation of how, or even if, the terms are associated with one another. *See* First Am. Compl. ¶ 1 n.1. Plaintiff asserts that "Exhibit A includes other depictions of the practitioner exclusive label." *Id.* However, only one of the examples included in Exhibit A is labeled "practitioner exclusive." All of the rest of the product images are labeled as a "medical food."

Metagenics removed the action to this Court on May 12, 2022, *see* ECF No. 1, and subsequently filed a motion to dismiss, *see* ECF No. 10. TIMM filed an amended complaint on July 14, 2022, *see* ECF No. 14-1, and Metagenics now moves to dismiss that complaint.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When ruling on a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which the court may take judicial notice." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (alteration adopted) (internal quotation marks omitted).

## III.  ARGUMENT

### A.  Counts 1 and 3 Must Be Dismissed Because the Facts Supporting these Claims Are Not Separable from a Breach-of-Contract Claim.

Count 1 alleges that Metagenics made fraudulent misrepresentations[2] about its products being "practitioner exclusive" both before and after it entered into a contract with TIMM, and

---

[2] In addition to fraudulent misrepresentation, the First Amended Complaint also lists "Fraud in the Inducement" in the heading of the first cause of action, but it does not discuss or even mention fraud in the inducement in the numbered paragraphs. First Am. Compl. at 4. Because the requirements for a claim of fraud in the inducement "are essentially the same as those for a

3

Count 3 alleges in the alternative that those misrepresentations were made negligently. TIMM asserts that it acted in reliance upon statements that Metagenics products were "practitioner exclusive" when it "initially signed-up [sic] to sell products with Metagenics." First Am. Compl. ¶ 29. And it maintains that it "continued promoting and selling" Metagenics products "in reliance" on those same statements. *Id.* ¶ 30. According to TIMM, these statements were false because, at least nine years after signing the contract, Metagenics began selling its products through Amazon, so, at least according to TIMM, the products were not "practitioner exclusive." *Id.* ¶ 27.

In the District of Columbia, the torts of fraudulent misrepresentation and negligent misrepresentation have similar elements. The elements of a claim of fraudulent misrepresentation are "(1) a false representation (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation." *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 438 (D.C. 2013) (internal quotation marks omitted). "[T]he elements of a negligent misrepresentation claim are the same as those of a fraudulent misrepresentation claim, except a negligent misrepresentation claim does not include the state of mind requirements of fraud." *Jacobson v. Hofgard*, 168 F. Supp. 3d 187, 206 (D.D.C. 2016) (internal quotation marks omitted). "A misrepresentation is an assertion that is not in accord with the facts." *Saucier*, 64 A.3d at 438 (internal quotation marks omitted). "A misrepresentation is material if it would be likely to induce a reasonable person to manifest his assent, or if the maker knows that it would be likely to induce the recipient to do so." *Id.* (cleaned up).

A plaintiff may not bring a claim for fraudulent or negligent misrepresentation when the factual basis for that claim is a breach of contract. "Although 'conduct occurring during the course

---

fraudulent misrepresentation claim," *Jacobson v. Hofgard*, 168 F. Supp. 3d 187, 195 n.1 (D.D.C. 2016), this motion will discuss only fraudulent misrepresentation.

of a contract dispute may be the subject of a fraudulent or negligent misrepresentation claim,' the facts supporting that claim must be 'separable from the terms of the contract.'" *Motir Servs., Inc. v. Ekwuno*, 191 F. Supp. 3d 98, 111 (D.D.C. 2016) (quoting *Araya v. JPMorgan Chase Bank, N.A.*, 775 F.3d 409, 418 (D.C. Cir. 2014)); *see also Plesha v. Ferguson*, 725 F. Supp. 2d 106, 113 (D.D.C. 2010) ("District of Columbia law requires that the factual basis for a fraud claim be separate from any breach of contract claim that may be asserted."); *Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080, 1089 (D.C. 2008) ("[T]he tort must exist in its own right independent of the contract, and any duty upon which the tort is based must flow from considerations other than the contractual relationship.").

Here, Counts 1 and 3 must be dismissed because the facts supporting these claims are not separable from TIMM's breach-of-contract claim. TIMM asserts that it entered into a contract with Metagenics in 2011 that allowed it to sell Metagenics products, and that it sold Metagenics products since that time. First Am. Compl. ¶ 26. It alleges not only that these products were labelled at the time as "practitioner exclusive," *id.*, which TIMM claims means that the products "will only be distributed from a practitioner's office", *id.* ¶ 2, but also that this guarantee was part of the "direct terms" of its contract with Metagenics, *id.* ¶ 35. The crux of TIMM's claims of fraudulent and negligent misrepresentation is that Metagenics only began selling its products through Amazon during the COVID-19 pandemic—almost a decade after the contract between TIMM and Metagenics was formed—and that it was *that* conduct that was a violation of the "practitioner exclusive" guarantee. *Id.* ¶¶ 11–12, 27. But this allegation merely states a claim for breach of contract; it does not describe "any duty [that] flow[s] from considerations other than the contractual relationship." *Choharis*, 961 A.2d at 1089. Because the facts underlying the claims of fraudulent and negligent misrepresentation "directly involve the terms" of the alleged agreement

between TIMM and Metagenics, "they are duplicative of [TIMM's] breach of contract claim and cannot provide the basis for an actionable, independent tort." *Jacobson*, 168 F. Supp. 3d at 199.

To be sure, "misrepresentations that *precede* the formation of [a] contract and are alleged to have induced plaintiffs" to enter into a contract are not duplicative of a breach-of-contract claim and will survive a motion to dismiss if otherwise adequately pleaded. *Id.* (internal quotation marks omitted). However, the only reason TIMM provides for the "practitioner exclusive" guarantee being fraudulent is that Metagenics sold its products on Amazon, *see* First Am. Compl. ¶ 27, and TIMM does not allege that Metagenics did so either before the contract was formed or during the first nine years of the contractual relationship. As a result, even if the "practitioner exclusive" label is now a false representation—and, to be clear, Metagenics does not concede that it is— TIMM's claims can survive a motion to dismiss only if Metagenics *knew* in 2011 that it was going to sell its products on Amazon *nine years later*. TIMM did not make that allegation in its original complaint, which Metagenics noted in its first motion to dismiss. *See* Mem. of P. & A. in Supp. of Mot. to Dismiss at 5–6 (ECF No. 10). In response, TIMM now asserts, without any additional factual pleading, that "[i]t is plausible that Metagenics knew that it was going to sell its products on Amazon." First Am. Compl. ¶ 31. But saying it does not make it so. A claim is plausible on its face only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. And the pleading standard is even higher when, as here, the allegation sounds in fraud. A plaintiff "must state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), which requires "stat[ing] the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud," *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (internal quotation marks

6

omitted). TIMM has provided no such details and instead offers only baseless, speculative assertions. Accordingly, Counts 1 and 3 must be dismissed.

> **B.     Counts 2 and 4 Must Be Dismissed Because TIMM Does Not Identify a Provision of the Contract that Was Breached.**

Count 2 alleges that Metagenics breached its contract with TIMM, while Count 4 alleges that it breached the duty of good faith and fair dealing. Specifically, Count 2 asserts that Metagenics "fail[ed] to adhere to the direct terms" of its agreement with TIMM, "as outlined in promotional materials that defined the offer to Plaintiff and as outlined in the new account form." First Am. Compl. ¶ 35. According to TIMM, the offer it received from Metagenics "was for 'practitioner exclusive' supplements and services," and that offer was "clearly outlined in the new account form." *Id.* ¶¶ 36–37. Count 4 asserts that "[t]he misrepresentations made by Metagenics is [sic] in direct violation of the terms of the contract and have destroyed the right of Plaintiff to receive the fruits of the contract." *Id.* ¶ 55.

In support of Counts 2 and 4, TIMM attached an unsigned, undated copy of the purported new account application as Exhibit B to its amended complaint. The application contains a document titled "Metagenics Internet Policy," which outlines the requirements that a *customer* must follow when selling Metagenics products. First Am. Compl. Ex. B at 4 (ECF No. 14-2 at 37). This policy clearly prohibits *customers* from selling Metagenics products on third-party websites such as Amazon:

> Metagenics policy is for all of its customers selling its products online to sell on customer-owned sites only. Metagenics does not authorize or permit sales of its professional lines of products on third-party-facilitated sites (e.g., Amazon.com, eBay, etc.).
>
> Metagenics reserves the right not to sell or supply any products to any customer that is found to be selling Metagenics products on third-party-facilitated sites.

7

*Id.* The internet policy states that it is effective from January 1, 2008 "until further notice" and that "Metagenics may, in its sole discretion, revise or eliminate this Policy at any time." *Id.*

To state a claim for breach of contract, a plaintiff must show "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach." *Xereas v. Heiss*, 987 F.3d 1124, 1135 (D.C. Cir. 2021) (alteration adopted) (quoting *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009)). In addition, to survive a motion to dismiss in federal district court, the plaintiff must identify the specific provision of the contract that was breached. *See He Depu v. Yahoo! Inc.*, 306 F. Supp. 3d 181, 192–93 (D.D.C. 2018) (dismissing a breach-of-contract claim as "insufficient because the amended complaint fails to identify any specific provisions of the [contract] that defendants allegedly breached"); *Saha v. George Washington Univ.*, 577 F. Supp. 2d 439, 443 (D.D.C. 2008) ("Because plaintiff has not identified specific breached provisions nor attached any text of the [contract] for the Court to consider, it cannot be said that plaintiff has pled enough facts to state a claim that the [defendant] breached the [contract's] conditions." (internal quotation marks omitted)), *aff'd*, 358 F. App'x 205 (D.C. Cir. 2009); *Kaar v. Wells Fargo Bank, N.A.*, No. C 16-01290, 2016 WL 3068396, at *1 (N.D. Cal. June 1, 2016) ("To claim a breach of contract in federal court the complaint must identify the specific provision of the contract allegedly breached by the defendant."); *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 131 (S.D.N.Y. 2015) ("[T]he *Twombly-Iqbal* standards of federal pleading require a complaint to identify, in non-conclusory fashion, the specific terms of the contract that a defendant has breached. Otherwise, the complaint must be dismissed.").

In the District of Columbia, "all contracts contain an implied duty of good faith and fair dealing, which means that neither party shall do anything which will have the effect of destroying

8

or injuring the right of the other party to receive the fruits of the contract." *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000) (citation and internal quotation marks omitted). "If a party to the contract evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party, he or she may be liable for breach of the implied covenant of good faith and fair dealing." *Id.* "A party does not breach 'its duty of fair dealing when reasonable persons in the parties' shoes would have expected the contract to be performed as it was.'" *Brown v. Sessoms*, 774 F.3d 1016, 1025 (D.C. Cir. 2014) (quoting *Adler v. Abramson*, 728 A.2d 86, 90–91 (D.C. 1999)).

Count 2 must be dismissed because TIMM fails to identify a specific provision of the contract that Metagenics purportedly violated. TIMM alleges "[t]here was an offer [] described in the promotional materials" and "the direct terms of their agreement" were "outlined in promotional materials that defined the offer to Plaintiff." First Am. Compl. ¶¶ 35–36. In addition, Plaintiff states that the new account form it signed when it began selling Metagenics products "clearly outlined" an offer for "'practitioner exclusive' supplements and services." *Id.* ¶¶ 36–37. But the documents that TIMM attaches to its First Amended Complaint show no such thing. First, Plaintiff did not attach any "promotional materials" describing either an offer or an agreement between TIMM and Metagenics and did not cite to any specific provision of these "promotional materials" that was breached. Second, Exhibit B, which Plaintiff attaches for the first time to its First Amended Complaint, is simply a blank, undated application form—signed by neither TIMM nor Metagenics. Third, and most important, the term "practitioner exclusive" is nowhere to be found in the account application attached as Exhibit B. Plaintiff has shown no evidence of an offer by Metagenics that it, Metagenics, would not sell its own products on Amazon, nor identified any

9

specific provision that was breached by Metagenics selling its own products on Amazon. As such, Plaintiff has not pled enough facts to state a breach-of-contract claim.

Although the allegations in Count 2 focus solely on the purported promise of "practitioner exclusive" products, TIMM suggests earlier in its complaint that Metagenics also breached the contract by failing to give TIMM 10 days' advance written notice and an opportunity to cure the violation before cancelling TIMM's account. *See id.* ¶¶ 16–17. TIMM quotes a provision from the "Internet Policy" form stating that a practitioner "who violate[s] [Metagenics's Policy] will receive ten (10) days' advance written notice from Metagenics that they are in violation of the Policy and therefore will no longer be able to purchase the Products after the end of the ten (10) day notice period." *Id.* ¶ 16 (bracketed language used in complaint). If, during that ten-day period, the customer comes into "compliance with this Policy, [the practitioner] should promptly notify Metagenics." *Id.* (bracketed language used in complaint). Then, "if [Practitioner] has brought his or her site into compliance with this Policy, Customer's account will be reactivated." *Id.* (bracketed language used in complaint).

Setting aside whether the document that TIMM attached as Exhibit B was the version of the agreement in effect at the time of the alleged breach,[3] this argument fails on its own terms. The language that TIMM quotes makes clear that the opportunity to cure a violation does not apply to situations where the customer sells Metagenics products on a third-party website. The agreement states: "Customers that correct *their website* to bring it into compliance with this Policy should promptly notify Metagenics. Metagenics will then review *Customer's website*. If

---

[3] Should the Court deny all or part of Metagenics' motion to dismiss and allow this case to proceed to discovery, Metagenics will show that it revised its internet policy—as it is authorized to do in the agreement—and that the version in effect when it terminated TIMM's account did not include a 10-day-notice requirement.

10

Metagenics determines Customer has brought *his or her site* into compliance with the policy, Customer's account will be reactivated[.]" *Id.* Ex. B at 4 (emphases added).  The agreement does not obligate Metagenics to reactivate the account of a customer who sold Metagenics products on a third-party website and then removed the product listings from that third-party website.  Indeed, the agreement is unequivocal that "Metagenics reserves the right not to sell or supply any products to any customer that is found to be selling Metagenics products on third-party-facilitated sites." *Id.*[4]

In light of the dismissal of the breach-of-contract claim in Count 2, the claim for breach of the implied duty of good faith and fair dealing in Count 4 must also be dismissed.  Count 4 fails to plead any factual allegations distinct from the breach-of-contract claim.  *See Kaar*, 2016 WL 3068396, at *2 ("Plaintiffs make no separate factual claims for the breach of the implied covenant of good faith and fair dealing. . . . It will be subsumed under the breach of contract claim.").  Moreover, because TIMM has not identified any provision of the contract that defines "practitioner exclusive" or that otherwise conditions performance on Metagenics selling exclusively to practitioner's offices, TIMM has not alleged sufficient facts to state a plausible claim that Metagenics "evade[d] the spirit of the contract, willfully render[ed] imperfect

---

[4] To be sure, although the opportunity to cure is limited to violations involving the customer's website, the 10-day-notice requirement arguably applies to all violations of the Internet Policy, including sales on third-party websites. Thus, TIMM could argue that it was still entitled to 10 days' notice before its account was terminated, even if it was not entitled to have its account restored if it cured the violation during that 10-day period.  But "mere breach without proof of monetary loss is *injuria absque damno*, *i.e.*, a wrong which results in no loss or damage, and thus cannot sustain an action."  *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009) (alteration rejected) (citations and internal quotation marks omitted).  Here, even if TIMM had received 10 days' notice, the end result would be the same because Metagenics would still have terminated TIMM's account at the end of that period.  As a result, TIMM cannot sustain a claim for breach of contract based on the 10-day-notice provision.  *See id.* (ruling that a party could not prevail on a claim for breach of a confidentiality provision because "the discernible consequences . . . were nil").

performance, or interfere[d] with performance by the other party" such that it violated the implied duty of good faith and fair dealing. *Paul*, 754 A.2d at 310.

### C. Count 5 Must Be Dismissed Because TIMM Does Not Allege that its Contract with Metagenics Was Invalid.

Count 5 alleges unjust enrichment. In the District of Columbia, however, "there can be no claim for unjust enrichment when an express contract exists between the parties." *Schiff v. Am. Ass'n of Retired Persons*, 697 A.2d 1193, 1194 (D.C. 1997) (footnote omitted); *see also United States ex rel. Morsell v. Symantec Corp.*, 130 F. Supp. 3d 106, 129 (D.D.C. 2015) ("As a general rule, a valid contract's existence precludes a plaintiff from asserting unjust enrichment and payment by mistake claims, which are based on quasi-contract theories."). To be sure, a plaintiff may advance an unjust-enrichment or other quasi-contract claim in the alternative, but such a claim "must be supported by, at the very least, an allegation that there is no valid contract." *Morsell*, 130 F. Supp. 3d at 129 (internal quotation marks omitted). Here, TIMM's complaint does not allege, either explicitly or implicitly, that TIMM's contract with Metagenics was invalid. The claim of unjust enrichment must therefore be dismissed.

### D. Count 6 Must Be Dismissed Because TIMM Does Not Allege a Breach of Warranty and, Alternatively, it Failed to Notify Metagenics of the Alleged Breach.

Count 6 alleges that Metagenics breached both an express warranty and the implied warranty of merchantability because its products did not conform to the promises or affirmations made on the container or label that the products were "practitioner exclusive." First Am. Compl. ¶¶ 69–70. To prove a breach of warranty in the District of Columbia, a "plaintiff must show (1) the existence of a warranty with respect to the particular goods she bought or leased from the defendant; (2) a breach of that warranty; and (3) that the breach was the proximate cause of the plaintiff's injuries." *Mero v. City of Segway Tours of Wash. DC, LLC*, No. 1:11-cv-00817,

2012 WL 13059946, at *4 n.4 (D.D.C. June 7, 2012) (citing D.C. Code § 28:2-314 cmt. 13). Although not defined in the District of Columbia's Uniform Commercial Code, TIMM's complaint recognizes the widely accepted definition of a "warranty" as "a statement or representation, made by a seller of goods as a part of a contract of sale, concerning the character, quality, or title of goods." First Am. Compl. ¶ 65; *see Davis v. Dunham's Athleisure Corp.*, 362 F. Supp. 3d 651, 659–60 (E.D. Mo. 2019); *N. Ga. Ready Mix Concrete Co. v. L & L Constr., Inc.*, 508 S.E.2d 722, 726 (Ga. Ct. App. 1998) (quoting *Elgin Jewelry Co. v. Estes & Dozier*, 50 S.E. 939, 940 (Ga. 1905)); *Chilton Ins. Co. v. Pate & Pate Entrs., Inc.*, 930 S.W.2d 877, 890 (Tex. Ct. App. 1996); *Vasco Trucking, Inc. v. Parkhill Truck Co.*, 286 N.E.2d 383, 386 (Ill App. Ct. 1972); *Letres v. Wash. Co-op Chick Ass'n*, 111 P.2d 594, 595–96 (Wash. 1941).

        TIMM's breach-of-warranty claim fails because the "practitioner exclusive" label is not a warranty. How Metagenics sells its products, whether through Amazon or not, has nothing to do with the "character, quality, or title" of those products. First Am. Compl. ¶ 65. Warranties apply in situations where, for example, the valves in a heating, ventilation, and air conditioning unit are unfit to carry water at high temperatures and under high pressure, *Quality Air Servs., LLC v. Milwaukee Valve Co.*, 671 F. Supp. 2d 36, 45–46 (D.D.C. 2009), the cement used in a construction project is defective, *Dist. Concrete Co. v. Bernstein Concrete Corp.*, 418 A.2d 1030, 1035–36 (D.C. 1980), or a new automobile cannot be driven safely without spinning out of control, *Williams v. Steuart Motor Co.*, 494 F.2d 1074, 1076 (D.C. Cir. 1974). This is not a comparable situation – TIMM has made no allegation that Metagenics products are defective or that the content of the product is not what Metagenics represented that it was. In fact, TIMM's willingness to continue distributing Metagenics products to its patients after it allegedly found out about Metagenics' Amazon sales undercuts its argument that those sales affected the character, quality, or title of the

13

products. After all, if the character or quality of a medical product had been undermined, a responsible medical practitioner's office would not insist on continuing to sell those products to its patients.

Count 6 also fails for an entirely separate reason: TIMM did not notify Metagenics within a reasonable period of time that Metagenics had allegedly breached a warranty. In addition to satisfying the other elements of a breach-of-warranty claim, a plaintiff must also prove that he notified the seller "within a reasonable time after he discover[ed] or should have discovered" the breach. D.C. Code § 28:2-607(3)(a). Failure to comply with the notice requirement will result in the plaintiff being "barred from any remedy." *Id.* The purpose of this requirement "is to open the doors to negotiation" between the buyer and the seller. *Witherspoon v. Philip Morris Inc.*, 964 F. Supp. 455, 464 (D.D.C. 1997). The notification "need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation." D.C. Code § 28:2-607 cmt. 4; *see also Witherspoon*, 964 F. Supp. at 464 (explaining that a plaintiff is "not required to threaten litigation in order to provide notice").

TIMM did not comply with the notice requirement. According to the complaint, the owner of TIMM had a discussion with a representative from Metagenics on January 12, 2022 about whether there would be any issues with TIMM selling Metagenics products to its patients through Amazon. First Am. Compl. ¶¶ 10, 13–14. But TIMM asking for permission to sell Metagenics products on Amazon is not the same thing as TIMM informing Metagenics that it considered Metagenics' sale of Metagenics products on Amazon to be a violation of the "practitioner exclusive" label or any other explicit or implicit guarantee. TIMM never "open[ed] the way for normal settlement through negotiation" because it never informed Metagenics that there was a problem with Metagenics selling on Amazon, which meant that Metagenics never had the

14

opportunity either to correct the problem or to negotiate a solution to the dispute before TIMM filed its complaint. D.C. Code § 28:2-607 cmt. 4. As a result, TIMM is barred from any remedy for the alleged breaches of express and implied warranties, and its claim must be dismissed.

In its First Amended Complaint, TIMM attempts to plead around this defect by adding a paragraph to Count 6 asserting that TIMM gave notice first on January 12, 2022, during the meeting between its owner and a Metagenics representative, again on February 10, 2022, in an email from the TIMM founder, and yet again on February 21, 2022, in an email from TIMM's counsel. First Am. Compl. ¶ 74. But the second and third purported notifications occurred *after* Metagenics had cancelled TIMM's account on February 9, 2022, when there was no longer an agreement in effect. *See id.* ¶ 15. And the first purported notification is not plausible in light of TIMM's other factual allegations. TIMM asserts in the fact section of its First Amended Complaint that its owner "discussed with the Metagenics's local representative if he could begin selling the products on Amazon himself to his patients." *Id.* ¶ 13. But, in Count 6, TIMM asserts that, in that very same meeting, its owner made the Metagenics representative "aware that Metagenics was in violation of the practitioner-exclusive label." *Id.* ¶ 74. Those two versions of events are not reconcilable. A reasonable customer would not inform Metagenics in one breath that it considered Metagenics to be in violation of a warranty and in the next breath ask for permission to engage in the same activity that allegedly violated the warranty. TIMM has not plausibly alleged that it satisfied the notice requirement.[5]

---

[5] TIMM also contends that Metagenics had reasonable notice because it "obviously knew [it was] in violation of [its] 'practitioner exclusive' label" when it sold its products on Amazon. First Am. Compl. ¶ 74. But that argument suggests that the notification requirement is unnecessary and can be disregarded. TIMM cites no caselaw in support of this contention, and the clear statutory language suggests otherwise. *See* D.C. Code § 28:2-607(3)(a). Moreover, Metagenics would not "obviously" know it was in violation of its agreement with TIMM if it disagreed with TIMM's interpretation of the term "practitioner exclusive."

15

### E.  Count 7 Must Be Dismissed Because TIMM Does Not Plausibly Allege the Existence of a Fiduciary Duty.

Count 7 alleges that Metagenics owed a fiduciary duty to TIMM because the two parties developed "a relationship founded upon trust and confidence," and it further alleges that Metagenics breached that duty.  Compl. ¶ 80.  "As a general rule, the mere existence of a contract does not create a fiduciary duty.  A fiduciary relationship could exist, however, where circumstances show that the parties extended their relationship beyond the limits of the contractual obligations to a relationship founded upon trust and confidence." *Paul v. Jud. Watch, Inc.*, 543 F. Supp. 2d 1, 6 (D.D.C. 2008) (citations omitted).  Because the existence of a fiduciary relationship is "a fact-intensive question," *Church of Scientology Int'l v. Eli Lilly & Co.*, 848 F. Supp. 1018, 1028 (D.D.C. 1994), courts are sometimes reluctant to resolve the issue on a motion to dismiss or a motion for summary judgment, *Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 341 (D.D.C. 2011).  Nevertheless, courts have granted motions to dismiss when a plaintiff "fail[s] to plead anything to suggest that [its] relationship with [the defendant] was anything more than [a] typical commercial relationship." *Attias v. CareFirst, Inc.*, 365  F. Supp. 3d 1, 24 (D.D.C. 2019); *see also Sandza v. Barclays Bank PLC*, 151 F. Supp. 3d 94, 107 (D.D.C. 2015) (granting a motion to dismiss because the plaintiff did "not plead any specific facts that suggest something more than a standard, arms-length debtor-creditor relationship"); *Henok v. Chase Home Fin., LLC*, 922 F. Supp. 2d 110, 120 (D.D.C. 2013) (denying a motion for leave to amend a complaint because the plaintiff did "not plead any facts which show the existence of a special relationship of trust or confidence with [the defendant] extending beyond his standard debtor-creditor relationship").

Nothing in the First Amended Complaint suggests that TIMM and Metagenics had any contact beyond the regular commercial interactions expected between a buyer and a seller.  And

16

TIMM does not allege any facts to contradict that. TIMM does nothing more than assert that such a relationship exists, *see* First Am. Compl. ¶¶ 80–89, however, "conclusory statements" and "[t]hreadbare recitals" of legal standards are not sufficient to survive a motion to dismiss under Rule 12(b)(6), *Iqbal*, 556 U.S. at 678. Because TIMM has not plausibly alleged the existence of a fiduciary duty, its claim for a breach of that fiduciary duty must be dismissed.

## IV.  CONCLUSION

For these reasons, Metagenics respectfully requests that the Court dismiss TIMM's First Amended Complaint with prejudice.

Date: July 28, 2022

Respectfully submitted,

/s/ Gordon D. Todd
Gordon D. Todd (D.C. Bar No. 475203)
Ellen Crisham Pellegrini (D.C. Bar No. 1002051)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of July 2022, I electronically filed the foregoing Memorandum of Points and Authorities with the Clerk of the Court. I also certify that a copy of the foregoing Memorandum of Points and Authorities was served, by the Court's electronic filing system, on the following counsel of record:

Amy E. Norris
NORRIS LAW, PLLC
616 E Street N.W.
Suite 1156
Washington, DC 20004
amy@norrislawgroup.org
(202) 830-1225

*Counsel for Plaintiff*

/s/ Gordon D. Todd
Gordon D. Todd (D.C. Bar No. 475203)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

*Counsel for Defendant*