UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INSTITUTE OF MULTIDIMENSIONAL MEDICINE,<br><br>   *Plaintiff*,<br><br> v.<br><br>METAGENICS, INC.<br><br>   *Defendant*. | Civil No. 1:22-cv-01308-JEB |

**DEFENDANT'S REPLY IN SUPPORT OF**
**<u>MOTION TO DISMISS FIRST AMENDED COMPLAINT</u>**

As explained in our first Rule 12 motion, Plaintiff TIMM's original complaint rested on unfounded and implausible allegations and failed to plead a viable claim. *See* ECF No. 1-2. And as demonstrated in our renewed Rule 12 motion, ECF No. 17, TIMM's First Amended Complaint, ECF No. 16, cures none of those defects. Now, in its opposition, TIMM misunderstands and misstates Metagenics' legal arguments, and offers no explanation as to how it can succeed on its claims. *See* Opp'n to Mot. to Dismiss First Am. Compl. ("Opp'n") (ECF No. 18). In addition, TIMM improperly attempts to supplement its pleadings with four new exhibits in its opposition. *See id.* at 4. The Court should disregard these exhibits. When reviewing a motion to dismiss, a court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated *in the complaint*[,] and matters of which the court may take judicial notice." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (emphasis added) (alteration adopted) (internal quotation marks omitted). A plaintiff may not allege additional facts in an answering brief. *See Hackensack Riverkeeper, Inc. v. Del. Ostego Corp.*, 450 F. Supp. 2d 467, 488 (D.N.J. 2006) ("A court is limited on a motion to dismiss to facts contained and alleged in the Complaint

and may not consider facts raised for the first time by parties in a legal brief."). TIMM had the opportunity to attach these exhibits to its First Amended Complaint, and yet chose not to do so. It cannot now be allowed to reference these exhibits for the first time in its opposition.[1]

Metagenics' motion should be granted and the First Amended Complaint dismissed with prejudice.

## ARGUMENT

### A. Counts 1 and 3 Must Be Dismissed Because the Pre-Contract Allegations Are Implausible and Lack Particularity, While the Facts Supporting the Post-Contract Allegations Are Not Separable from a Breach-of-Contract Claim.

In Counts 1 and 3, TIMM alleges that Metagenics made a fraudulent misrepresentation, or, in the alternative, a negligent misrepresentation, when it labeled its products "practitioner exclusive." TIMM's allegations of fraudulent and negligent misrepresentation cover two distinct periods of time: the time *preceding* contract formation, which TIMM alleges occurred in 2011, *see* First Am. Compl. ¶ 26; and the period *after* contract formation.

As to the former, TIMM pleads that Metagenics knew in 2011 that it would begin selling its products on Amazon nine years later, during a once-in-a-century global pandemic. *See* Mem. in Supp. of Mot. to Dismiss First Am. Compl. ("Mem.") at 6 (ECF No. 17). In its opposition, TIMM does not dispute this characterization. Rather, it contends that "Metagenics knew or could

---

[1] These exhibits should be disregarded for the additional reason that TIMM has provided no information on how these exhibits are relevant to its claims. For example, TIMM does not allege that it relied on, or even saw, any of these exhibits prior to entering into the contract with Metagenics or during the lifespan of the contract. In fact, TIMM does not allege, or provide any information to confirm, that these exhibits were even published on the Metagenics website at the time TIMM was considering entering into a contract with Metagenics or at any time during the life of TIMM's contract with Metagenics. Finally, two of the new exhibits are specifically directed at patients, not at practitioners such as TIMM. *See* First Am. Compl. Exs. B, D (ECF No. 20-1). Therefore, by definition they cannot be relevant to TIMM's claims. For all of the above reasons, the four new exhibits should be disregarded and stricken.

have known that it was going to make fraudulent misrepresentations" before the contract was signed in 2011 and that "[d]iscovery will allow for TIMM to determine the intent of Metagenics at various points before and during the contract." Opp'n at 5. But TIMM is entitled to discovery only if it survives a motion to dismiss, and it can survive a motion to dismiss only if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, TIMM has made no specific factual allegations that would allow the Court to draw the reasonable inference that Metagenics knew that it would sell its products on Amazon nine years before it started to do so and falsely told TIMM that it would not. Merely asserting that the allegation is "plausible" is not sufficient to survive a motion to dismiss. *See* First Am. Compl. ¶ 31.

Counts 1 and 3 face and fail the even more demanding particularity requirements of Federal Rule of Civil Procedure 9(b). *See Jacobson v. Hofgard*, 168 F. Supp. 3d 187, 206 (D.D.C. 2016) (explaining that Rule 9(b) applies to claims of both fraudulent and negligent misrepresentation). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), which means "stat[ing] the time, place and content of the false misrepresentations," "the fact misrepresented," "what was retained or given up as a consequence of the fraud," and the identities of the "individuals allegedly involved in the fraud," *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (cleaned up). Here, TIMM does not identify a single Metagenics employee involved in the alleged fraud, nor the specific time or place where unidentified employees made purported misrepresentations. Instead, TIMM supplies only speculative and implausible assertions. Accordingly, insofar as Counts 1 and 3 allege misconduct preceding the formation of the contract, they must be dismissed. *See id.* at 1256–58 (dismissing a False Claims Act complaint for failure to comply with Rule 9(b) because the

complaint failed to allege the start date of the fraud, failed to provide the specific roles of the numerous individuals allegedly involved in the fraudulent scheme, and failed to set forth any facts exemplifying the fraudulent scheme).

As for the post-contract period, TIMM does not contest that Counts 1 and 3 must be dismissed if the facts supporting those claims are not separable from TIMM's breach-of-contract claim. See Mem. at 5–6; *Araya v. JPMorgan Chase Bank, N.A.*, 775 F.3d 409, 418 (D.C. Cir. 2014); *Motir Servs., Inc. v. Ekwuno*, 191 F. Supp. 3d 98, 111 (D.D.C. 2016); *Plesha v. Ferguson*, 725 F. Supp. 2d 106, 113 (D.D.C. 2010); *Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080, 1089 (D.C. 2008). TIMM's only response is that they should survive as alternative claims because "Defendant is arguing in Part B of their motion that the contract does not exist." Opp'n at 6. That assertion, however, is false. Metagenics never argued that the contract does not *exist*. Rather, it maintains that it did not *breach* the contract. See Mem. at 7–12. TIMM's argument rests on its mischaracterization of Metagenics' motion, and once that fails, TIMM's argument fails. Insofar as Counts 1 and 3 allege misconduct following the formation of the contract, they cannot survive even as alternative claims and must therefore be dismissed.

    **B.**    **Counts 2 and 4 Must Be Dismissed Because, as TIMM Concedes, the Contract Does Not Contain a "Practitioner Exclusive" Guarantee.**

In its opposition, TIMM contradicts its own First Amended Complaint. In Count 2, TIMM pleads that Metagenics "fail[ed] to adhere to the direct terms" of its agreement with TIMM, "as outlined in promotional materials that defined the offer to Plaintiff and as outlined in the new account form." First Am. Compl. ¶ 35. According to TIMM, the new account form "clearly outlined" an offer "for 'practitioner exclusive' supplements and services." *Id.* ¶¶ 36–37. However, as explained in the motion to dismiss, the blank, undated application form TIMM attached to its First Amended Complaint contained no mention of the term "practitioner exclusive." See Mem.

at 9–10. In its opposition, TIMM does not respond to this argument. *See* Opp'n at 8. This silence alone would be enough to show that TIMM had abandoned the issue. *See Pauling v. District of Columbia*, No. 1:13-cv-0943, 2015 WL 13891312, at *1 (D.D.C. June 25, 2015) ("Courts have properly and consistently construed this type of silence as abandonment of the argument in question.") (citing *Wal-Mart Stores, Inc. v. Sec'y of Labor*, 406 F.3d 731, 736 n* (D.C. Cir. 2005); *Hunter v. D.C. Child & Family Servs. Agency*, 710 F. Supp. 2d 152, 157 (D.D.C. 2010); *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 268 (D.D.C. 2012)). TIMM, however, goes even further and concedes that "[t]he 'practitioner exclusive' label is separate from the contract." Opp'n at 6. In a further reversal of its pleading, TIMM now admits in its opposition that the "practitioner exclusive" label "did not specifically appear in the 'new account form' that is the contractual document that was breached." Opp'n at 6. Metagenics cannot have breached a requirement TIMM agrees was not part of the contract. TIMM's breach-of-contract claim relating to the alleged "practitioner exclusive" guarantee is clearly abandoned.

In an attempt to salvage Count 2, TIMM attempts to recast its breach-of-contract claim as an allegation that Metagenics breached the provision of its "Internet Policy" requiring it to give TIMM 10 days' advance written notice and an opportunity to cure a violation before cancelling TIMM's account. *See* Opp'n at 8. As Metagenics noted in its motion to dismiss, the allegations in Count 2 focus solely on the purported—and non-existent—promise of "practitioner exclusive" products, not the 10-day notice-and-cure provision. *See* Mem. at 10; First Am. Compl. ¶¶ 16–17. But even accepting TIMM's new version of Count 2, the argument still fails because the contract provision does not apply to situations where customers sell Metagenics products on third-party websites. The agreement states: "Customers that correct *their website* to bring it into compliance with this Policy should promptly notify Metagenics. Metagenics will then review *Customer's*

5

*website*. If Metagenics determines Customer has brought *his or her site* into compliance with this Policy, Customer's account will be reactivated[.]" First Am. Compl. Ex. B at 4 (emphases added).

TIMM's only response is to assert in a footnote, without quoting from the policy or citing to any legal authority, that "[t]he policy violations section does not differentiate between a practitioner selling on their website that the practitioner hosts, versus selling on their website page that a third-party hosts." Opp'n at 8 n.1. But TIMM offers no reason why the Court should depart from the plain terms of the contract. "The first step in contract interpretation is determining what a reasonable person in the position of the parties would have thought the disputed language meant." *1010 Potomac Assocs. v. Grocery Mfrs. of Am., Inc.*, 485 A.2d 199, 205 (D.C. 1984). "If the document is facially unambiguous, its language should be relied upon as providing the best objective manifestation of the parties' intent." *Id.* Courts "will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity." *Indep. Mgmt. Co. v. Anderson & Summers, LLC*, 874 A.2d 862, 867 (D.C. 2005) (quoting *Bragdon v. Twenty-Five Twelve Assocs. Ltd. P'ship*, 856 A.2d 1165, 1170 (D.C. 2004)). Here, there is nothing ambiguous about the notice-and-cure provision, which repeatedly refers to the "Customer's website." First Am. Compl. Ex. B at 4. And, interpreting the notice-and-cure provision as applying only to customer websites accords with other provisions of the Metagenics Internet Policy, including the separate provision that specifically prohibits the "sales of its professional lines of products on third-party-facilitated sites (e.g., Amazon.com, eBay, etc.)" and clearly states that "Metagenics reserves the right not to sell or supply any products to any customer that is found to be selling Metagenics products on third-party facilitated sites." *Id.*; *see also 1010 Potomac Assocs.*, 485 A.2d at 205 ("The writing must be interpreted as a whole, giving a reasonable, lawful, and effective meaning to all its terms.").

Finally, in light of TIMM's concession that "[t]he 'practitioner exclusive' label is separate from the contract," Opp'n at 6, TIMM's claim in Count 4 that Metagenics breached the duty of good faith and fair dealing must fail as well. TIMM contends that "Metagenics evaded the spirit of the contract to provide 'practitioner exclusive' products by their action of selling on Amazon to the general public." *Id.* at 9. But TIMM does not explain how "the spirit of the contract" could include a "practitioner exclusive" guarantee when the contract itself does not even use the term "practitioner exclusive."

      **C.**      **Count 5 Must Be Dismissed Because Neither Party Alleges that the Contract Between TIMM and Metagenics Was Invalid.**

TIMM also misunderstands why the claim of unjust enrichment in Count 5 must be dismissed. As explained in the motion to dismiss, "there can be no claim for unjust enrichment when an express contact exists between the parties." Mem. at 12 (quoting *Schiff v. Am. Ass'n of Retired Persons*, 697 A.2d 1193, 1194 (D.C. 1997) (footnote omitted)); *see also United States ex rel. Morsell v. Symantec Corp.*, 130 F. Supp. 3d 106, 129 (D.D.C. 2015) ("[A] valid contract's existence precludes a plaintiff from asserting unjust enrichment."). TIMM's only response is that it should be allowed to plead unjust enrichment in the alternative. *See* Opp'n at 10–11. But, as Metagenics also explained in its motion to dismiss, a claim of unjust enrichment in the alternative "must be supported by, at the very least, an allegation that there is no valid contract." Mem. at 12 (quoting *Morsell*, 130 F. Supp. 3d at 129).

Here, neither party disputes the contract's validity. Quite the contrary, TIMM alleges that Metagenics breached a valid contract. *See* First Am. Compl. ¶¶ 35–41. As explained in Section I.A, Metagenics does not dispute that the contract was valid; it contends only that it did not breach the contract. Even now in its opposition, TIMM does not dispute the contract's validity. Opp'n

7

at 8–9.  In the absence of any such allegation, the claim of unjust enrichment must be dismissed. *See Morsell*, 130 F. Supp. 3d at 129.

> **D.      Count 6 Must Be Dismissed Because TIMM Does Not Allege a Breach of Warranty and, Alternatively, it Failed to Notify Metagenics of the Alleged Breach.**

TIMM pleads that a "warranty" is "a statement or representation, made by a seller of goods as a part of a contract of sale, concerning the character, quality, or title of goods."  First Am. Compl. ¶ 65.  It asserts, without any factual or legal support, that the term "'[p]ractitioner exclusive' absolutely describes the character of the product and the serious nature of the product" and that the term "is a warranty that goes to the character of the product."  Opp'n at 11.  But TIMM still does not explain how Metagenics' chosen marketing channel, whether through Amazon, a brick-and-mortar store, or a doctor's office, has anything to do with the "character, quality, or title" of those products.  The "character, quality, or title" of Metagenics products remains the same regardless of who is responsible for handing the product over to the customer.  TIMM also does not respond to any of the cases cited by Metagenics that establish that warranties apply in entirely different situations than this one.  *See* Mem. at 13; *Williams v. Steuart Motor Co.*, 494 F.2d 1074, 1076 (D.C. Cir. 1974); *Quality Air Servs., LLC v. Milwaukee Valve Co.*, 671 F. Supp. 2d 36, 45–46 (D.D.C. 2009); *Dist. Concrete Co. v. Bernstein Concrete Corp.*, 418 A.2d 1030, 1035–36 (D.C. 1980).  Nor does it have any explanation as to why it wants to continue selling products to its patients when it purports to believe that the "character or quality" of those products has been undermined.  Mem. at 13–14.

TIMM's only response to Metagenics' alternative argument—that TIMM failed to notify Metagenics of the breach of warranty—is to restate the conclusory allegations it made in its First Amended Complaint.  *See* Opp'n at 11–12; First Am. Compl. ¶ 74.  TIMM does not contest that a buyer's failure to notify a seller "within a reasonable time after [the buyer] discover[ed] or should

have discovered" the breach will result in the buyer being "barred from any remedy." D.C. Code § 28:2-607(3)(a). Nor does TIMM contest that the first purported notification of a breach of warranty on January 12, 2022, is implausible in light of its other allegation that on the very same day it asked for permission to sell the very same Metagenics products on Amazon. *See* Mem. at 15; First Am. Compl. ¶¶ 10, 13–14, 74. Nor does it contest that the second and third purported notifications—on February 10 and 21, 2022, respectively—occurred *after* Metagenics had cancelled TIMM's account on February 9, 2022, when there was no longer an agreement in effect. *See* Mem. at 15; First Am. Compl. ¶¶ 15, 74. Because TIMM failed to respond meaningfully to any of Metagenics' arguments on the breach-of-warranty claim, Count 6 should be dismissed.

      **E.**      **Count 7 Must Be Dismissed Because TIMM Does Not Plausibly Allege the Existence of a Fiduciary Relationship.**

TIMM does not dispute that a claim for breach of a fiduciary duty should be dismissed if the plaintiff fails to plead any facts suggesting that the relationship between the parties extended beyond standard commercial interactions. Although the definition of a fiduciary relationship is "flexible," *Heidi Aviation, LLC v. Jetcraft Corp.*, 573 F. Supp. 3d 182, 206 (D.D.C. 2021) (quoting *Millennium Square Residential Ass'n v. 2200 M St. LLC*, 952 F. Supp. 2d 234, 248 (D.D.C. 2013)), it is not unbounded. A claim for breach of a fiduciary duty should be dismissed if the plaintiff "fail[s] to plead anything to suggest that [its] relationship with [the defendant] was anything more than [a] typical commercial relationship." *Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 24 (D.D.C. 2019); *see also Sandza v. Barclays Bank PLC*, 151 F. Supp. 3d 94, 107 (D.D.C. 2015) (granting a motion to dismiss because the plaintiff did "not plead any specific facts that suggest something more than a standard, arms-length debtor-creditor relationship"); *Henok v. Chase Home Fin., LLC*, 922 F. Supp. 2d 110, 120 (D.D.C. 2013) (denying a motion for leave to amend a complaint because

9

the plaintiff did "not plead any facts which show the existence of a special relationship of trust or confidence with [the defendant] extending beyond his standard debtor-creditor relationship").

The First Amended Complaint pleads no facts suggesting that the relationship between TIMM and Metagenics extended beyond the standard commercial interactions that regularly occur between a buyer and a seller. *See* First Am. Compl. ¶¶ 80–89. Bizarrely, in its opposition, TIMM argues that the statement on Metagenics' website that "Metagenics was founded 'to help the Practitioner fulfill their oath'" is sufficient evidence to establish a fiduciary relationship. Opp'n at 12. That statement was made on a public website and was directed at all current and prospective customers of Metagenics. It does not even remotely support the contention that Metagenics and TIMM shared "a relationship founded upon trust and confidence." First Am. Compl. ¶ 80. And if it is the best example that TIMM can offer for why Metagenics owed a fiduciary duty to TIMM, then it only supports Metagenics' argument that no fiduciary relationship existed.

## CONCLUSION

For the foregoing reasons, as well as those filed in Metagenics' motion to dismiss, this Court should dismiss TIMM's First Amended Complaint with prejudice.

Date: August 18, 2022

Respectfully submitted,

/s/ Gordon D. Todd
Gordon D. Todd (D.C. Bar No. 475203)
Ellen Crisham Pellegrini (D.C. Bar No. 1002051)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of August 2022, I electronically filed the foregoing Reply with the Clerk of the Court. I also certify that a copy of the foregoing Reply was served, by the Court's electronic filing system, on the following counsel of record:

Amy E. Norris
NORRIS LAW, PLLC
616 E Street N.W.
Suite 1156
Washington, DC 20004
amy@norrislawgroup.org
(202) 830-1225

*Counsel for Plaintiff*

    /s/ Gordon D. Todd
Gordon D. Todd (D.C. Bar No. 475203)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

*Counsel for Defendant*